**Marvin LEBOWITZ**

v.

**FORBES LEASING AND FINANCE CORPORATION (a Foreign Corporation), Appellant, et al.**

No. 71-1439.

United States Court of Appeals, Third Circuit.

Argued Nov. 30, 1971.

Decided Feb. 24, 1972.

Gibbons, Circuit Judge, filed concurring opinion.

Lawrence Silver, Dilworth, Paxson, Kalish, Levy & Coleman, Philadelphia, Pa., for appellants.

Henry A. Stein, Mesirov, Gelman, Jaffe & Levin, Philadelphia, Pa., for appellee.

Before SEITZ, Chief Judge, and KALODNER and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

The plaintiff, a resident of Pennsylvania, is a former employee of defendant Forbes Leasing (Forbes).[1] Forbes is a Delaware corporation and has its main office in New York. At all times here relevant it also maintained an office in Pennsylvania. However, at no time did it register to do business in that state.

Plaintiff originally sued in the Pennsylvania state courts seeking damages resulting from his allegedly invalid discharge by defendant. He asserted damages amounting to $200,000, and commenced his action by a writ of foreign attachment which the sheriff executed, prior to any notice to the defendant or any hearing, by serving two Philadelphia banks having Forbes checking accounts aggregating $75,000. Forbes then removed the case to the federal district court on the basis of diversity of citizenship and entered a general appearance. The attachment continued in effect. F. R. Civ. P. 64. Forbes moved to have it quashed. However, the motion was denied by the district court,

326 F.Supp. 1335, and this § 1292(b) appeal followed.

Forbes contends that the attachment of its accounts violates procedural due process of law and the Fourth Amendment to the Constitution. We see no merit in the Fourth Amendment claim. Therefore, we turn immediately to the due process contention.

Pennsylvania foreign attachment procedures authorize the issuance of a writ by the prothonotary without notice to the defendant, without any hearing, without an affidavit of meritorious action, without the posting of a bond, and without intervention by a judicial officer. Indeed, the attachment may precede the filing of the complaint by as much as five days. Once the attachment becomes effective, it is not dissolved by the general appearance of the defendant. Rather, dissolution occurs only if, inter alia, the defendant posts an adequate bond or other acceptable security or the plaintiff fails to prosecute his case with due diligence. Also, provision is made that if the defendant can demonstrate that the amount of property attached is excessive when compared to the amount in controversy he may obtain a reduction.

Specifically, Forbes contends that the Supreme Court's recent expression concerning due process expounded in Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct.1820, 23 L.Ed.2d 349 (1969) renders the Pennsylvania foreign attachment procedures unconstitutional. In Sniadach the Court held that Wisconsin's prejudgment wage garnishment law contravened the due process clause of the Constitution to the extent that it permitted prejudgment garnishment of a small debtor's wages without notice or a hearing. Noting the difference in factual settings between Sniadach and this appeal the preliminary inquiry therefore, is whether the due process principles expounded in Sniadach and its ap-

1. Other defendants are named in the complaint. However, their status is not pertinent to the disposition of this appeal.

parent progeny[2] render the Pennsylvania's foreign attachment procedures unconstitutional.

In Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), Justice Harlan noted that due process principles are the guarantors of an efficient system for resolving disputes. We believe that the issue here should be examined in light of this observation. In this case both parties are private persons. Thus, our principal concern is whether the attachment procedures being challenged critically impair the resolution of disputes without serving to preserve any compensating governmental interest. The Court in Sniadach faced such a situation. There the seizure of Mrs. Sniadach's wages prior to any hearing on the merits of the plaintiff's claim tended to reverse the usual litigating postures of the parties. Ordinarily the plaintiff bears the burden of bringing suit and proving his claim. But Sniadach involved a situation where the defendant, as a result of the wage seizure, found herself deprived of her only means of support and, in effect, unable to avoid settlement and await the opportunity to present her defense in an adversary proceeding.

Plaintiff's first contention is that Pennsylvania's foreign attachment procedures violate due process because they permit deprivation of property without notice, a hearing or an affidavit of meritorious action, and without requiring the posting of a bond or the intervention of any judicial officer. In view of plaintiff's particular circumstances, the question before us, therefore, is whether the due process clause precludes a Pennsylvania plaintiff from invoking that state's foreign attachment procedures against a foreign corporate defendant not registered to do business in the state.

The effect of a Pennsylvania attachment is to immobilize a defendant's property at the instance of a claimant who is not required to make a showing of even a colorable claim. This consequence, in and of itself, may critically impair the defendant's ability to participate effectively in judicial proceedings designed to resolve the dispute between the parties. Indeed, Forbes alleges that such is the case here in view of the fact that approximately 40% of its assets are tied up by the attachment. Given this possible consequence, we must ask whether Pennsylvania's foreign attachment procedures promote any compensating governmental interest.

It is quite apparent that notice as a pre-condition to an attachment might well defeat the primary purpose behind an attachment, i.e., to compel an appearance. Obviously, if the property could be removed before the attachment became effective there would be no compulsion to appear. The absence of any requirement of an affidavit of meritorious action is not a deficiency of constitutional proportions. Indeed, the complaint here was verified. Likewise, while the intervention of a judicial officer prior to attachment might be desirable, we do not agree that the absence of such intervention renders process by attachment unconstitutional. Nor do we believe that the absence of a pre-attachment bond requirement, though such a requirement might be desirable, is contrary to due process requirements. None of these alleged deficiencies critically impair the efficiency of the adversary system. Thus, in our view, Sniadach does not require a general holding that the Pennsylvania foreign attachment procedures are unconstitutional.

This conclusion, however, does not dispose of Forbes' second contention that, in any event, foreign attachment is unconstitutional when an alternative method of obtaining jurisdiction is available. Plaintiff insists that foreign attachment, by providing a basis for obtaining jurisdiction over nonresidents, serves the important state policy of ac-

---

2. Compare Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) and Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971).

cording resident plaintiffs access to the state forum in actions against nonresidents. Forbes does not contest the weight of this policy. Rather, it averts to the existence of a readily available alternative means of obtaining jurisdiction over nonresidents such as itself, i. e., Pennsylvania's "long-arm" statute.[3] Forbes' contention is that because long-arm jurisdiction adequately effectuates the state's purpose by providing residents with broad access to its courts in actions against nonresident defendants, the state's foreign attachment procedures are without justification.

■ Although the long-arm statute does replace the necessity for quasi-in-rem jurisdiction in some instances, it does not necessarily obviate the need for attachment prior to a non-resident defendant's general appearance. A plaintiff employing the long-arm statute may face extended litigation as to whether a particular defendant is as a matter of law subject to that process. Indeed, ultimately it may be determined that no jurisdiction exists. In contrast, to the extent of the nonresident's property subject to the state's jurisdiction, foreign attachment provides an immediate and certain basis on which to exercise jurisdiction over a nonresident defendant. It thereby constitutes a greater inducement for such a defendant to appear and consequently, accomplishes one of the principal objectives underlying enactment of foreign legislation. We therefore conclude that the Pennsylvania foreign attachment procedures here challenged are not constitutionally objectionable as applied to Forbes before its general appearance.

Of course, Forbes implies that after its general appearance there no longer existed any justification for the attachment. We agree that, typically, after a party whose property has been attached enters a general appearance the compensating governmental interest which supports foreign attachment loses its vitality. See Boddie v. Connecticut, supra.

Of course, exceptional circumstances might arise, where a plaintiff may demonstrate that release of the property attached would pose a reasonable possibility that any judgment thereafter obtained would go unsatisfied. But we are not free to adopt our own view as to post-appearance attachment. We say this because we think the reasoning of the Supreme Court's decisions in Ownbey v. Morgan, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1921) and McKay v. McInnes, 279 U.S. 820, 49 S.Ct. 344, 73 L.Ed. 975 (1929) precludes such action. Any reexamination of the continuing vitality of these cases must come from the Supreme Court.

The judgment of the district court will be affirmed.

GIBBONS, Circuit Judge (concurring).

I am troubled by the result in this case even though I agree that under the governing precedents in the Supreme Court we must affirm. Pennoyer v. Neff, 95 U.S. 714, 717, 24 L.Ed. 565 (1877); Ownbey v. Morgan, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1921); Coffin Brothers v. Bennett, 277 U.S. 29, 48 S.Ct. 422, 72 L.Ed. 768 (1928); McKay v. McInnes, 279 U.S. 820, 49 S.Ct. 344, 73 L.Ed. 975 (1929). All of these decisions antedate the decision in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) which gave impetus to the adoption of modern long arm statutes. Whatever may be said in justification of permitting the states to use foreign attachment as an inducement to a foreign defendant to refrain from litigating the jurisdictional facts underlying the state's in personam jurisdiction over him, nothing can be said in justification of continuing the attachment after a foreign defendant makes a general appearance. A foreign defendant who has appeared generally is no more or less likely to conceal assets or make fraudulent conveyances than is a local defendant. In these cir-

---

3. Pa.Stat. Tit. 15, § 2011 (1961).

cumstances the only discernible state interest is an intentional discrimination against foreign defendants. Such a discrimination is difficult to justify under the commerce clause and the fourteenth amendment. We are, however, bound by the precedents, and they were not overruled by Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L. Ed.2d 349 (1969).