375 A.2d 1285

Harry SCHREIBER, Schreiber Transport, Inc., and Sullivan Lines, Inc., Appellants,

v.

REPUBLIC INTERMODAL CORPORATION and Lazard Freres, Appellees,

and

Union National Bank of Pittsburgh, Garnishee.

SULLIVAN LINES, INC., Appellant,

v.

DORIS LEASING COMPANY, INC., and Repubic Intermodal Corporation, Appellees,

and

Union National Bank of Pittsburgh, Garnishee.

Supreme Court of Pennsylvania.

Argued Sept. 21, 1976.

Decided July 8, 1977.

Judd N. Poffinberger, Jr., David H. Ehrenwerth, Daniel D. Dinur, Kirkpatrick, Lockhart, Johnson & Hutchinson, Marvin Schreiber, Schreiber & Schreiber, Pittsburgh, for appellants.

Marcus Aaron II, John P. Edgar, Berkman, Ruslander, Pohl Lieber & Engel, Pittsburgh, Michael T. Sullivan, Bartel, Engelman & Fishman, New York City, for Republic Intermodal Corporation, appellee.

M. Bruce McCullough, Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, for garnishee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellants Harry Schreiber, Schreiber Transport, Inc. (Schreiber Transport), and Sullivan Lines, Inc. (Sullivan Lines), obtained writs of foreign attachment direct-

ing the sheriff to sequester an irrevocable letter of credit in favor of appellee, Republic Intermodal Corporation (R.I.C.), held by Union National Bank (Union Bank) at its Pittsburgh office. On February 10, 1976, Judge Smith of the Court of Common Pleas of Allegheny County dissolved the two writs of attachment, holding that the procedures governing foreign attachment in Pennsylvania[1] violate constitutional due process. U.S. Const. amend. XIV.

The same day appellants presented to Judge Louik of the same court a petition for an order for a writ of foreign attachment conditioned upon following procedures which would meet the requirements of due process. Judge Louik refused to grant the petition. Appellants have appealed the orders of Judge Smith and Judge Louik. We affirm.[2]

Appellants assert that Judge Smith erred in dissolving the attachments because he gave retroactive effect to *Jonnet v. Dollar Savings Bank,* 530 F.2d 1123 (3d Cir. 1976), which declared Pennsylvania's Rules of Civil Procedure relating to writs of foreign attachment unconstitutional. Alternatively, they argue that Judge Louik

1.  Pa.R.C.P. 1251 et seq.
2.  Appeals were taken to the Superior Court, which transferred the appeals to this Court. The Superior Court concluded that this Court had exclusive jurisdiction of the appeals pursuant to section 202(9) of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, art. II, § 202(9), 17 P.S. § 211.202(9) (Supp. 1976). Section 202(9) provides that the Supreme Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in matters in which the court has held invalid as repugnant to the Constitution of the United States any act of Assembly of this Commonwealth.

    Neither party has objected to the jurisdiction of this Court on the grounds that the Superior Court may properly have had jurisdiction over the appeals. Our jurisdiction to decide the appeals is thereby perfected. See 17 P.S. § 211.503(a) (Supp.1976) and Pa.R.A.P. 741. By accepting jurisdiction in these circumstances we express no view as to whether section 202(9) vests exclusive jurisdiction in this Court where, as here, the court of common pleas has held unconstitutional a Rule of Court, rather than an act of the Assembly.

erred in refusing to issue an order for a writ of foreign attachment which would avoid the procedural flaws in the existing rules. We hold that: (1) *Jonnet* did not establish a new principle of law which might be given non-retrospective effect; and (2) in the absence of any statute or rules of court which satisfy constitutional standards, foreign attachment is not presently available in Pennsylvania. Therefore, Judge Smith properly dissolved appellants' writs of foreign attachment and Judge Louik properly denied their petition for the writ.

## I

This dispute arises from a contract, entered into on August 15, 1975, by appellant Harry Schreiber, an individual and Pennsylvania resident, and appellee, R.I.C., a New York corporation not registered in Pennsylvania. Schreiber agreed to pay $1,465,000 for all the capital stock of R.I.C.'s wholly-owned subsidiary Sullivan Lines. Schreiber subsequently assigned his rights under the contract to Schreiber Transport, a Pennsylvania corporation.

At the closing, Schreiber paid $615,000 to R.I.C. with $550,000 of the balance secured by an irrevocable letter of credit in favor of R.I.C. The letter of credit was held by garnishee, Union Bank, at its Pittsburgh office.

After an audit, appellants alleged that R.I.C. had breached the contract. Appellants also alleged that R.I. C. was contemplating liquidation to defraud appellants. In September, 1975, appellants filed suit in New York against R.I.C., seeking rescission or reformation of the contract and damages. In October, 1975, the New York trial court enjoined R.I.C. from drawing upon the letter of credit, pending trial. After a two month trial, the court held that appellants were entitled to $42,124.00 in damages, but denied rescission or reformation. The court vacated the preliminary injunction which enjoined R.I.C.'s resort to the letter of credit. Before the court's

decision was reduced to a formal judgment, appellants instituted the present actions in Pennsylvania.[3]

On December 18, 1975, appellants filed a praecipe for a writ of foreign attachment, which directed the Sheriff of Allegheny County to seize the letter of credit held by Union Bank. The complaint in assumpsit, filed December 22, 1975, named R.I.C. as defendant, alleged fraud and breach of warranties, and requested damages in the amount of $1,829,413. Appellants amended the complaint to name as a defendant appellee Lazard Freres, a New York investment banking company. Appellants alleged that R.I.C. was an "alter ego" of Lazard Freres.

On January 20, 1975, appellant Sullivan Lines, as sole plaintiff, filed another praecipe for a writ of foreign attachment, again directing seizure of the same letter of credit. The complaint, filed January 22, 1976, named as defendants R.I.C. and its wholly-owned subsidiary, appellee Doris Leasing Company, a New York corporation. Appellant Sullivan Lines alleged breach of a January, 1975, lease agreement between Sullivan Lines and Doris Leasing Company, and requested damages of $524,885.

Appellees filed petitions to dissolve the attachments. The petitions were granted on February 10, 1976, by Judge Smith, who found that Pennsylvania rules for obtaining writs of foreign attachment violated the due process clause of the fourteenth amendment of the United States Constitution. Appellants then prepared a petition for a writ of foreign attachment which they presented to Judge Louik the same day. The petition requested that writs of foreign attachment be issued in a manner consistent with the strictures of the due process clause. After indicating that he would not grant the requested

3. The validity of appellants' efforts to commence suit by writ of foreign attachment is the only issue in these appeals. Therefore, we need not consider the effect of the New York judgment on the question whether Pennsylvania courts should entertain appellants' suits.

writs, Judge Louik granted a temporary restraining order enjoining Union Bank from honoring any drafts on the letter of credit. Judge Louik treated appellants' petition as a request for a preliminary injunction. On February 13, 1976, he refused to issue a preliminary injunction and vacated the temporary restraining order. These appeals followed.[4]

## II

Appellants first claim that Judge Smith erred by giving retroactive application to *Jonnet v. Dollar Savings Bank,* supra. Appellants concede that any attachment issued pursuant to the Pennsylvania rules after January 27, 1976, the filing date of *Jonnet,* must be dissolved.[5] As the instant attachments were issued December 18, 1975 and January 20, 1976, appellants insist that Judge Smith's reliance on *Jonnet* amounts to an erroneous retrospective application of that decision. We cannot agree.

Under the Pennsylvania rules, a foreign attachment permitted attachment of a non-resident defendant's non-exempt property upon any cause of action in which relief sought included a judgment or decree for the payment of money. Pa.R.C.P. 1252. Upon filing of a praecipe, the

4. On February 17, 1976, Judge Smith granted a supersedeas with respect to the orders vacating the foreign attachments, setting bond in the amount of $60,000.00. See Act of April 26, 1917, P.L. 102, § 2, 12 P.S. § 1109 (1953), suspended by Rule 5105(a) of the Rules of Appellate Procedure, effective July 1, 1976. Presently the rules governing supersedeas may be found at Pa.R.A.P. 1701 to 1782. Judge Smith's order specified that the supersedeas would be limited to a period of one year. Upon appellants' motion, this Court extended the supersedeas pending determination of the appeal.

5. When the United States Court of Appeals for the Third Circuit has held certain practices or procedures to violate federal constitutional rights, its decision will be accepted and followed by the courts of this Commonwealth until the United States Supreme Court has spoken on the issue. *Commonwealth v. Negri,* 419 Pa. 117, 213 A.2d 670 (1965). See also *Commonwealth v. Bennett,* 445 Pa. 8, 282 A.2d 276 (1971).

prothonotary automatically issued the writ. Pa.R.C.P. 1255. The attachment could precede the filing of the complaint by as much as five days. Pa.R.C.P. 1265. There was no requirement that the plaintiff notify the defendant of either the attachment or the complaint; this responsibility was delegated to the garnishee. Pa. R.C.P. 1267. Once issued, the attachment was not dissolved by the general appearance of the defendant. Pa. R.C.P. 1272. Rather, the attachment could be dissolved prior to judgment only if the defendant posted an adequate bond or other security, or if the plaintiff failed to prosecute the case with due diligence. Id.

In *Jonnet*, the United States Court of Appeals for the Third Circuit held that these rules violated procedural due process for the following reasons: (1) there was no requirement that a plaintiff file a sworn document stating facts upon which the cause of action was predicated; (2) the seizure process was entirely ministerial with no exercise of judgment by an official competent to determine whether there were facts justifying attachment or whether a valid claim had been stated; (3) the rules provided no machinery to indemnify a defendant for damages caused by wrongful attachment; (4) there were no means for a defendant to promptly contest the attachment; and (5) there were no procedures to allow the defendant to dissolve the attachment when the defendant made provision to protect the plaintiff's interest. 530 F.2d at 1129–30. See *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S. Ct. 1895, 40 L.Ed.2d 406 (1974); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Note, "Specifying the Procedure Required by Due Process Toward Limits on the Use of Interest Balancing," 88 Harv.L.Rev. 1510 (1975); Note, "Quasi in Rem Jurisdiction and Due Process Requirements," 82 Yale L.J. 1023 (1973).

■ ■ In dissolving appellants' writs of attachment, Judge Smith announced that he was relying upon the reasoning of *Jonnet* and the decisions in *McFadden v. McShane, Inc.,* (W.D.Pa. No. 74–1090, filed February 2, 1976), and *Radakovich v. Weisman,* 124 P.L.J. 63 (C.P. 1975), which also held Pennsylvania's foreign attachment procedures unconstitutional.

Appellants' claim must fail. The decision in *Jonnet* holding that Pennsylvania's rules governing foreign attachment are unconstitutional did not establish a new principle of law which might be applied prospectively only; i.e., to writs issued after the date of decision. In *Chevron Oil Company v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the United States Supreme Court stated that the threshold test in deciding whether a new decision might be given prospective application only is whether the decision establishes a new principle of law, either by overruling clear past precedent or by deciding an issue of first impression whose resolution was not clearly foreshadowed. 404 U.S. at 106, 92 S.Ct. at 355.[6] Only such a new principle of law may qualify for nonretrospective application. The decision in *Jonnet* does not meet this initial test, for the constitutional defects in Pennsylvania's rules governing foreign attachment were patent in light of recent precedents of the United States Supreme Court.

In arguing that *Jonnet* established a new principle of law, appellants rely on *Lebowitz v. Forbes Leasing and Finance Corporation,* 456 F.2d 979 (3d Cir. 1972), cert. denied, 409 U.S. 843, 93 S.Ct. 42, 34 L.Ed.2d 82 (1972), which upheld the constitutionality of Pennsylvania's foreign attachment procedures. Shortly after the decision

---

**6.** The other relevant factors identified by the Court, which are considered only when the decision establishes a new principle of law, involve looking to the prior history of the rule in question to determine whether its purpose and effect would be benefited by nonretrospective treatment, and weighing the inequity of retrospective application. 404 U.S. at 106–07, 92 S.Ct. at 355.

in *Lebowitz,* however, the United States Supreme Court invalidated Pennsylvania's and Florida's prejudgment replevin statutes on due process grounds. *Fuentes v. Shevin,* supra. In *Fuentes,* Mr. Justice Stewart, writing for the Court, noted that seizure of property without notice and hearing had been permitted only in "extraordinary situations" in which three factors were present: (1) seizure was directly necessary to secure an important governmental or general public interest; (2) there has been a special need for prompt action; and (3) "the State has kept strict control over its monopoly of legitimate force; the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance." 407 U.S. at 90–91, 92 S.Ct. at 2000. Two years later, in *Mitchell v. W. T. Grant Co.,* supra, the Court further delineated due process requirements in sustaining a Louisiana sequestration statute. The Louisiana statute authorized prejudgment seizure of property in which the attaching creditor possessed a security interest. The statute was upheld because it contained procedural safeguards distinguishing it from the replevin statutes considered in *Fuentes:* judicial approval of the sequestration order was required, based upon clearly demonstrated grounds, contained in an affidavit supporting the writ; the attaching creditor was required to post bond; the defendant could regain possession of the property by posting bond; and the defendant had a right to an immediate post-seizure hearing at which he could challenge the grounds for attachment and if successful, secure return of the property and obtain damages, including attorneys fees. 416 U.S. at 606, 94 S.Ct. at 1899. Finally, in *North Georgia Finishing, Inc. v. Di-Chem,* supra, the Court struck down a Georgia garnishment statute which permitted impoundment of a defendant's property prior to judgment, based on a conclusory affidavit signed by the plaintiff or his counsel. Mr.

Justice White, writing for the Court, held the statute invalid for the same reasons as the replevin statutes considered in *Fuentes.* The Georgia statute impermissibly authorized the seizure of property without notice or hearing. After the seizure, issued by the clerk based only on a conclusory affidavit, the owner was deprived of the property through the course of the litigation. Unlike the Louisiana statute upheld in *Mitchell,* it did not require a bond by the attaching party, the writ was issued by a clerk based on conclusory allegations, rather than by a judicial officer after review of an affidavit clearly setting forth facts justifying the attachment, and it failed to provide for an immediate hearing after seizure at which the defendant could challenge the grounds on which the writ was issued. 419 U.S. at 608, 95 S.Ct. at 722.

It is apparent that the Pennsylvania rules authorizing writs of foreign attachment could not withstand the due process scrutiny required by the decisions of the United States Supreme Court beginning with *Fuentes,* in 1972, and followed by *Mitchell* in 1974, and *Di-Chem* in 1975. Assuming that prejudgment seizure for the purpose of obtaining jurisdiction over a nonresident defendant "secures an important governmental or general public interest," the first test in *Fuentes,*[7] it is clear that the Pennsylvania rules failed to provide adequate judicial control

7. The continued validity of this interest is questionable in light of modern long-arm statutes providing for in personam jurisdiction over nonresidents. See, e. g., 42 Pa.C.S.A. §§ 8301 et seq. (Supp. 1977); see also 42 Pa.C.S.A. § 5322, effective on repeal of § 29(4) of Act of July 9, 1976, P.L. 586 (Pamphlet 1977). In his concurring opinion in *Jonnet,* Judge Gibbons concluded that Pennsylvania's foreign attachment procedures were unconstitutional because they permitted the exercise of jurisdiction over the property of individuals who did not have minimum contacts with the state sufficient to satisfy the requirements of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *Jonnet v. Dollar Savings Bank,* 530 F.2d 1123, 1130–43 (3d Cir. 1976) (concurring opinion of Gibbons, J.). Judge Gibbons' view that the minimum contacts requirements of *International Shoe* are applicable to in rem and quasi in rem jurisdiction has recently been confirmed. *Shaffer v. Heitner,* —— U.S. ——, 97 S.Ct. 2569, 53 L.

over the use of the attachment process. Moreover, as the *Jonnet* court recognized, the rules have none of the procedural safeguards required by *Fuentes, Mitchell* and *Di-Chem.* Although the decision in *Lebowitz* had not been expressly overruled at the time appellants filed their writs of foreign attachment, the decisions in *Fuentes, Mitchell* and *Di-Chem* sapped it of any precedential value.[8] The result in *Jonnet* was clearly foreshadowed.[9]

## III

We next consider appellants' claim that Judge Louik erred in refusing to issue an order for a writ of foreign attachment which would meet the requirements of procedural due process.

A. Appellees contend that this issue is not properly before the Court because appellants consented to having their petition for a writ of foreign attachment treated as a request for injunctive relief.[10] However, it ap-

---

Ed.2d 683 (filed June 24, 1977). Thus, a state with a long-arm statute may have no governmental interest in obtaining jurisdiction over nonresidents through attachment.

8. Prior to the attachments obtained by appellants, the trial court in *Jonnet* concluded that the decision in *Lebowitz* was no longer viable and held the rules providing for foreign attachment unconstitutional. *Jonnet v. Dollar Savings Bank of City of New York,* 392 F.Supp. 1385 (W.D.Pa.1975) (Teitelbaum, J.), aff'd 530 F.2d 1123 (3d Cir. 1976). Judge Finkelhor reached the same conclusion in *Radakovich v. Weisman,* 124 P.L.J. 63 (C.P.1975). Appellants obtained the first writ of attachment three days after *Radakovich* was decided, December 15, 1975, and more than eight months after the April 7, 1975, trial court decision in *Jonnet.*

9. Relying on the absence of any suggestion in *Jonnet* that the decision be applied prospectively only, the District Court for the Eastern District of Pennsylvania, in a diversity case, concluded, as we have, that *Jonnet* must be applied to dissolve foreign attachments issued prior to the decision in *Jonnet. Mel Richman, Inc. v. August Siekmann Mobelwerke, K. G.,* 411 F.Supp. 690 (E.D.Pa.1976) (Lord, C. J.).

10. Appellants have not challenged Judge Louik's denial of injunctive relief.

pears from the record that appellants sought injunctive relief in the alternative, after Judge Louik indicated that he intended to deny their petition. These circumstances do not establish consent by appellants to withdraw or abandon their original petition.

No transcript was made of the arguments before Judge Louik, but counsel for appellee, by affidavit, provides the following account:

> "And Now Comes Marcus Aaron II, who, being duly sworn according to law, deposes and says that he is Counsel for Republic Intermodal Corporation, and that in such capacity he appeared before Judge Louik of the Court of Common Pleas of Allegheny County at oral argument on February 11, 1976 pursuant to notice the previous day on Plaintiffs' Motion for a Writ of Foreign Attachmment. After Judge Louik indicated orally that he would deny the petition, the judge commented that a restraining order might be the only possible remedy. Whereupon Marvin Schreiber, Esq., Attorney for Plaintiff-Appellants orally moved the Court to issue a Temporary Restraining Order and Preliminary Injunction. In issuing the Temporary Restraining Order of February 11, 1976, Judge Louik acted in response to the oral motion of Marvin Schreiber."

██ These facts establish only that, when advised that their petition was going to be denied, appellants sought relief in the alternative based upon a different legal theory. This is explicitly permitted by the Rules of Civil Procedure. Pa.R.Civ.P. 1020(c) provides that "Causes of action and defenses may be pleaded in the alternative." Rule 1021 states: "Relief in the alternative or of several different types . . . may be demanded." Pa.R.Civ.P. 1021. These rules reflect the general principle that plaintiffs should not be forced to elect a particular theory in pursuing a claim, and avoids the attendant possibility that meritorious claims will fail because the wrong legal theory was chosen. Goodrich-Am-

ram, Procedural Rules Service 2d § 1020(c), at 185 (1976).

Appellants' request for alternate relief cannot constitute consent to abandon or withdraw their petition, absent any showing of such intent on the record. Judge Louik's statement that he would deny the petition and his subsequent opinion in which he said he had treated the petition as a request for injunctive relief constituted a denial of the petition. That issue has properly been preserved for appeal.

█ B. Appellants' challenge of the denial of their petition for an order for a writ of foreign attachment rests on a single premise: that despite the constitutional invalidity of Pennsylvania's rules authorizing foreign attachment, a writ of foreign attachment is still a viable remedy in this Commonwealth. This premise is incorrect. The Third Circuit in *Jonnet* did not merely invalidate a particular aspect of Pennsylvania's foreign attachment procedures, severable from the basic remedy itself. Rather, it determined that the entire scheme provided in the Rules of Civil Procedure, violated constitutional due process. By invalidating our foreign attachment rules, the *Jonnet* court struck down the only mechanism in Pennsylvania for obtaining a writ of foreign attachment.

Appellants contend that Judge Louik should have scrutinized the procedural history of the present case to determine whether, regardless of the invalidity of the rules, appellee's due process rights had been violated. Alternatively, they argue that Judge Louik should have granted them a hearing in response to their petition to allow them to establish grounds for a writ of foreign attachment, despite the absence of constitutional rules. After such a hearing, they assert that the court should have issued the writ, subject to conditions, not provided for in the rules, which would satisfy the due process rights of appellee.

In support of these arguments, appellants point out that the *Jonnet* court explicitly limited its holding:

> "In conclusion, we must emphasize that our decision today does not hold foreign attachment procedures unconstitutional per se. Our concerns are with ex parte procedures which summarily deprive a party of an interest in property, even though temporarily, without notice, an opportunity for a prompt hearing, or other essential safeguards against wrongful seizure. We require only that Pennsylvania provide procedures consistent with fundamental fairness for the respective interests of creditor and debtor alike."

530 F.2d at 1130. Because the court did not rule that foreign attachment was unconstitutional per se, appellants urge us to conclude that foreign attachment has not been abolished as a legal remedy in Pennsylvania, despite the constitutional infirmities of the rules.

The difficulty with this argument is that the "ex parte procedures" invalidated in *Jonnet* were the only procedures which authorized foreign attachment in Pennsylvania.[11] Appellants' argument rests on the assumption that, even in the absence of a valid statute or rules, Pennsylvania trial courts have inherent power to issue writs of foreign attachment. This assumption is incorrect. Historically, the writ of foreign attachment has been a creature of statute (or, in modern times, a subject of judicial rule-making power) for which strict compliance with the statutory provisions was essential.

11. Appellants contend that authority for the writ exists in the statutory provisions for foreign attachment. Act of June 13, 1836, P.L. 568, as amended, 12 P.S. §§ 2861 et seq. (1967), suspended by Pa.R.C.P. 1461, effective October 1, 1954. We find this argument unpersuasive. The statutory provisions were suspended by Pa.R.C.P. 1461; the invalidation of the present rules does not revive the suspended statutory provisions. Cf. 1 Pa.C.S.A. § 1956 (Supp.1977) (repeal of an amendatory statute does not revive the corresponding provision or section of the original statute or of any prior amendment); 1 Pa.C.S.A. § 1977 (Supp. 1977) (repeal of a repealing statute shall not be construed to revive the statute originally repealed).

See Goodrich-Amram, Procedural Rules Service 2d § 1251:2 at 15 (1976). Foreign attachment is not an independent cause of action entertained by the courts; it is solely a form of process, provided by statute or rule. Id. § 1251:5 at 20–21. The distinction appellants urge us to make between the procedures for obtaining a writ of foreign attachment, and foreign attachment, as an independent, substantive form of action, does not exist.

In limiting the scope of its holding, the *Jonnet* court was not suggesting that foreign attachments be issued on an ad hoc basis by trial courts. That court held that due process requires that Pennsylvania provide procedures consistent with fundamental fairness, if foreign attachment is to be an available constitutional procedure.

Determining the nature and form of new procedures for obtaining writs of foreign attachment involves policy considerations more appropriately resolved through the exercise of this Court's constitutionally granted rule-making power, Pa.Const. art. V, § 10, than through ad hoc trial court determinations. Hence, in the absence of rules meeting constitutional standards, foreign attachment is not an available form of process in Pennsylvania.[12]

Orders affirmed.

JONES, former C. J., did not participate in the decision of this case.

NIX, J., did not participate in the consideration or decision of this case.

12. In *Shaffer v. Heitner,* supra, the United States Supreme Court struck down a Delaware sequestration statute as applied to secure jurisdiction over individuals who did not have minimum contacts with the state sufficient to justify Delaware's exercise of jurisdiction. See n. 7, supra. Appellees assert that they do not have minimum contacts with Pennsylvania sufficient to justify its exercise of jurisdiction over them. Our disposition renders consideration of this question unnecessary.