509 A.2d 1279

Phillip J. SCOTT and Lorraine M. Scott, On Behalf of Themselves And All Others Similarly Situated, Appellants,

v.

ADAL CORPORATION and Girard Trust Bank, On Behalf Of Itself and All Others Situated, And Joseph A. Sullivan, Sheriff of Philadelphia County.

Phillip J. SCOTT and Lorraine M. Scott,

v.

MELLON BANK (EAST) N.A., (Formerly Girard Trust Bank) and Joseph Sullivan, Sheriff of Philadelphia County.

Appeal of MELLON BANK (EAST) N.A.

Superior Court of Pennsylvania.

Argued June 19, 1985.

Filed May 1, 1986.

Reargument Denied June 16, 1986.

290

Henry J. Sommer, Philadelphia, for Scott, appellants in No. 1933 and appellees in No. 2130.

Walter Weir, Jr., Philadelphia, for appellant in No. 2130 and appellee in No. 1933.

Andrew P. Bralow, Philadelphia, for Sullivan, appellee.

Before MONTEMURO, POPOVICH and WATKINS, JJ.

WATKINS, Senior Judge:

This appeal and cross-appeal comes to us from an Order entered July 2, 1984 in the Court of Common Pleas of Philadelphia County granting appellant Scott's Motion for Summary Judgment in part, holding that the notice requirements of the Rules of Civil Procedure for sheriff's sales of real property did not comport with due process, but denying the motion in all other respects.

This action was commenced by a class action complaint in equity filed in April, 1976, by the Scotts on behalf of themselves and all others similarly situated. The complaint was filed against the creditor, Girard Trust Bank (now Mellon Bank East N.A.) and the collection agency (Adal Corporation) which had exposed the Scott's real property to a sheriff's sale. Also named as a defendant was the Sheriff of Philadelphia County, Joseph A. Sullivan.

Mellon Bank and Adal Corporation filed preliminary objections. Sheriff Sullivan filed an Answer with New Matter. At a later stage of the case, Sheriff Sullivan filed a Motion for Judgment on the Pleadings. Several other motions not relevant to this appeal were also filed by various parties. Thereafter, the court below granted Mellon Bank and Adal Corporation's preliminary objections and Sheriff Sullivan's Motion for Judgment on the Pleadings, dismissing the case.

This Court, on appeal, reversed that dismissal and remanded the case for a class action determination and further proceedings. See *Scott v. Adal Corp.*, 276 Pa. Superior Ct. 459, 419 A.2d 548 (1980). After our Supreme Court denied review, the remanded case was assigned to Judge White, of the court below, who directed the parties to brief and argue the class action issue. On March 1, 1982, Judge

White ruled that the case could proceed as a class action, with a plaintiff class represented by Scott and a defendant class of judgment creditors and sheriff's sale purchasers represented by Girard Trust Bank (Mellon).

Subsequently Scott and the defendants entered into agreements and stipulations to simplify the issues. In return for the satisfaction of the judgment against him, Phillip Scott released Girard Bank (Mellon) from individual monetary claims arising out of this transaction. This release left only the individual and class claims for declaratory and equitable relief to be resolved by the court.[1]

After additional discovery the case was assigned to Judge Goldman, before whom both Girard (Mellon) and Sheriff Sullivan, argued that a class action was improper in the case. Judge Goldman rejected these arguments and on July 27, 1983, held that Judge White had previously certified the class.

The parties then filed cross-motions for summary judgment as to liability on all remaining claims in the lawsuit.

On July 2, 1984, the court below granted Scott's motion in part, holding that the notice requirements of the Rules of Civil Procedure for sheriff's sales of real property did not comport with due process. The court denied the Scott's motion in all other respects. This Order was to become effective October 17, 1984. On July 31, 1984, the court below issued an implementation order.

Thereafter, the parties filed an appeal and a cross appeal to this Court. This Court, on its own motions, questioned its jurisdiction since the order appealed from held a rule of court unconstitutional. We then transferred the appeal to the Supreme Court pursuant to Pa. R.A.P. 751. The Supreme Court remanded the appeal to this Court by an order dated December 14, 1984, to decide whether jurisdiction

---

1. Although Girard's (Mellon's) judgment against him was satisfied, appellant Scott remains subject to the challenged sheriff's sale procedures. He is presently the defendant in a mortgage foreclosure proceeding. *Fed. Nat'l. Mortgage Ass'n. v. Scott C.P. Phila.*, July Term, 1984, No. 1755.

over this matter lies with this Court or with the Supreme Court pursuant to 42 Pa. C.S.A. § 722(7) which vests jurisdiction in the Supreme Court when a lower court decision holds a statute unconstitutional. Accordingly, we begin with the determination of this issue.

Pursuant to 42 Pa. C.S.A. § 742, the Superior Court has exclusive jurisdiction of all appeals from final orders of the Court of Common Pleas regardless of the nature of the controversy or the amount involved, except such classes of appeals as are by any provision of this Chapter within the exclusive jurisdiction of the Supreme Court or the Commonwealth Court.

Under 42 Pa. C.S.A. § 722(7) the Supreme Court has exclusive jurisdiction of appeals from final orders of the Courts of Common Pleas in:

(7) Matters where the court of common pleas has held invalid as repugnant to the Constitution, treaties or laws of the United States, or to the Constitution of this Commonwealth, any treaty or law of the United States or any provision of the Constitution of, or of any statute of, this Commonwealth, or any provision of any home rule charter.

▮ Although our appellate courts have held that rules of civil procedure have the force or effect of statutes, e.g., *Dombrowski v. Philadelphia*, 431 Pa. 199, 245 A.2d 238 (1968); *In Re: Schofield*, 362 Pa. 201, 66 A.2d 675 (1949); *Lojeski v. Quirk*, 202 Pa.Superior Ct. 471, 198 A.2d 410 (1964), they have not held that rules of court are statutes for purposes of appellate jurisdiction. Indeed, the Supreme Court has, by implication, expressed doubt that rules of court should be treated as statutes for jurisdictional purposes.

In *Schreiber v. Republic Intermodal Corp.*, 473 Pa. 614, 375 A.2d 1285 (1977), the Supreme Court declined to rule on the issue:

Appeals were taken to the Superior Court, which transferred the appeals to this Court. The Superior Court

concluded that this Court had exclusive jurisdiction of the appeals pursuant to § 202(9) of the Appellate Court Jurisdiction Act of July 31, 1970, P.L. 673, Art. LL, § 202(9) 17 P.S. 211, 202(9) (Supp.1976), now [42 Pa.C.S.A. 722(7)]. Section 202(9) provides that the Supreme Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in matters in which the court has held invalid as repugnant to the Constitution of the United States any act of Assembly of this Commonwealth. Neither party has objected to the jurisdiction of this Court on the grounds that the Superior Court may properly have had jurisdiction over the appeals. Our jurisdiction to decide the appeal is thereby perfected. (citations omitted). By accepting jurisdiction in these circumstances we express no view as to whether § 202(9) vests exclusive jurisdiction in this Court where, as here, the court of common pleas has held unconstitutional a Rule of Court rather than an Act of Assembly. 375 A.2d at 1286 n. 2.

Considering the foregoing, we conclude that the Pennsylvania Supreme Court does not have exclusive jurisdiction when a Rule of Court has been declared unconstitutional. Therefore, this appeal is properly before us.

The questions presented in the appeal and the cross-appeal are as follows:

1.  Did the court of common pleas abuse its discretion in failing to afford equitable relief to members of the plaintiff's class from sheriff's sales for grossly inadequate prices?

2.  Do sheriff's sales which deprive judgment debtors of property far in excess of the amount they owe deny those debtors substantive due process of law?.

3.  May a court deny the benefit of its decision in a class action to class members who are parties to the proceeding?

In the cross appeal, Mellon Bank questions whether the form of notice given to judgment debtors in Philadelphia County in sheriff's sale proceedings against real property

fails to satisfy minimum constitutional requirements of procedural due process because the form does not provide notice of the existence of any procedures or rights the judgment debtor may exercise to prevent or set aside such sheriff's sales.

In their first issue appellants' argue that since sheriff's sales of a debtor's property may take place for grossly inadequate prices, the court below was required to find that equitable principles dictate that all future sales be prevented unless a minimum price was bid.

Pennsylvania law is clear that mere inadequacy of price is not sufficient reason to set aside a Sheriff's Sale. *Fidelity Bank v. Pierson*, 437 Pa. 541, 264 A.2d 682 (1970). To set aside such a sale, the price must be grossly inadequate. *Cappozzi v. Antonoplos*, 414 Pa. 565, 201 A.2d 420 (1964); *Vend-A-Matic, Inc. v. Frankford Trust Co.*, 296 Pa. Superior Ct. 492, 442 A.2d 1158 (1982). The courts have traditionally looked at each case on its own facts. It is for this reason that the term "grossly inadequate price" has never been fixed by any court at any given amount or any percentage amount of the sale.

In support of the proposed per se rule appellant Scott offers the case of *Home Beneficial Life Ins. Co. v. Blue Rock Shopping Center*, 379 A.2d 1147, 1149 (Del.Super.,1977). Under the ruling in that case, the Delaware courts have adopted a standard of fifty percent in determining whether a sheriff's sale has occurred at a grossly inadequate price; however, this percentage amount is not inflexible. The Delaware courts also look to such factors as the nature and size of the property, the structure on it, and its value, as factors which may lead to a departure from the fifty percent test. See, e.g. *Girard Trust Bank v. Castle Apartment, Inc.*, 379 A.2d 1144 (Del.Super.,1977).

Considering the foregoing, we conclude that the court below did not abuse its discretion in failing to afford the requested equitable relief.

Next, appellant maintains that, equity aside, permitting a sheriff's sale to proceed where a bid is less than a set percentage of the fair market price of the property violates substantive due process. As authority for this proposition, appellant relies on provisions contained in both the Pennsylvania and United States Constitutions. Appellants alternatively argue that this is an economic regulation enacted in the exercise of police power which cannot be sustained because it is arbitrary.

It is not disputed that both federal and state constitutional law mandate explicitly that private property cannot be taken for public use without compensation. The "taking" clause contained therein imposes a specific substantial standard, i.e., just compensation, when private property is divested to public uses. See, e.g. *U.S. v. Willow River Power Co.*, 324 U.S. 499, 65 S.Ct. 761, 89 L.Ed. 1101 (1945). In the case sub judice, the taking of property is not for public use rather, it is mediating a conflict between private parties.

The U.S. Supreme Court has acknowledged that the requirements for just compensation, in connection with the taking of property, were designed "to ban the Government from forcing some people to carry a public burden" which in all fairness and justice should be borne by the public as a whole. See e.g., *Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960). The courts have found government action or laws to be an unconstitutional taking where: (1) property is confiscated by the government, such as in an eminent domain proceeding see e.g. *Berman v. Parker*, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954); (2) where a law totally destroys a pre-existing property right. See e.g. *Armstrong v. U.S.*, supra; or (3) where a physical intrusion results in a taking. See *U.S. v. Causby,* 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946).

■ None of the above has occurred in the instant case. There is no "taking" at a sheriff's sale in the constitutional sense because there has not been any appropriation for government use.

■ Appellants also argue that because there is a transfer of property pursuant to foreclosure proceedings, the relevant Pa. Rule of Civil Procedure constitutes a state economic regulation of property rights and, therefore, is subject to substantive due process constraints.

Despite appellant's assertions, the Rules of Civil Procedure do not involve a restriction on one's liberty or property; a prerequisite to finding a violation of substantive due process. See e.g. *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

■ Further, appellant argues that the sheriff's sale procedure, as it presently operates, fails to meet constitutional requirements because there is no rational basis for the omission of any standard that requires a relationship between the price bid at the sale and the fair market value of the property.

The purpose of the rule is to provide a working mechanism to enforce a judgment. The government has no legitimate interest in setting a price for the property; instead the government allows the market to operate.

Accordingly, we conclude that appellant's arguments that there has been a "taking" or that the Rule is an arbitrary economic regulation or that a per se rule is constitutionally requied, are without merit.

In their third issue, appellants contend that the holding of the court below, that the sheriff's sale notice procedures were unconstitutional, should apply to all sheriff's sales of real property where the deed had not yet passed.

The lower court's order was dated July 2, 1984, and was to be effective on October 17, 1984. On July 31, 1984, the court below issued its implementation order, effective immediately. Appellants had also sought a stay to prevent any sales from being consummated in which the class members had not been given notice which met constitutional requirements. The stay was denied by both the court below and the Pennsylvania Supreme Court.

■ It is unclear what relief appellants are seeking but their claim at issue appears to be that the order should have been applied retroactively to void any deed passing from the time of the July 2, 1984, order until the July 31, 1984, implementation order.

Appellant relies on *Luskey v. Steffron (II)*, 469 Pa. 377, 366 A.2d 223 (1976). In *Luskey v. Steffron (I)*, 461 Pa. 305, 336 A.2d 298 (1975), the Supreme Court declared on April 17, 1975, that Pa.R.C.P. 3129 violated the due process clause of the United States Constitution in failing to provide personal notice to the owner of real estate that was the subject of a sheriff's sale. In *Luskey v. Steffron (II)*, supra, the Pennsylvania Supreme Court held that the holding in *Luskey (I)* was applicable to sheriff's sales *initiated* after April 17, 1975. In reaching this conclusion, the Supreme Court pointed out that:

> Prior to *Luskey* No. 1, this court and federal courts have found that notice by publication was adequate notice and comported with due process. (citations omitted.) Municipalities and purchasers have relied on such prior decisions and it would be manifestly unjust to negate clear titles to real estate ·purchased in good faith at sheriff's sales, based on prior notice provisions, given such reliances. 469 Pa. at 379–380.

The Supreme Court continued:

> However, as of April 17, 1985, the date of *Luskey* no. 1, notice was given to municipalities, courts and the legal profession that notice by publication in sheriff's sales was not longer constitutional.

The court below in its July 31, 1984 implementation order addressed three distinct categories that would require the sending of a new form of notice; all of those sheriff's sales to be scheduled in the future on which no writs of execution had yet been issued, all of those sheriff's sales that had been scheduled by virtue of the issuance of a writ of execution but on which no sale had yet taken place and all of those sheriff's sales where writs of execution had already issued, the sheriff's sale had taken place but the

sheriff had not yet delivered a deed to the sheriff's sale purchaser.

As in *Luskey*, No. 2, the municipalities, courts and the legal profession were on notice that as of July 2, 1984, the notice procedures in Sheriff's sales had been held unconstitutional. However, this was not to be effective until October of 1984. Thus, the creditors relied on the "old" procedure at least until the date of the implementation order. As the Supreme Court pointed out in *Luskey* No. 2, supra, municipalities and purchases have relied on such prior decisions and it would be manifestly unjust to negate clear titles to real estate purchased in good faith ... based upon prior notice provisions.

Therefore, we conclude that the court below did not err in not applying the order retroactively. Moreover, our disposition of the issue raised in Mellon's cross-appeal renders this point moot.

■ In the cross-appeal Mellon contends that Pa.R.C.P. 3129 is not unconstitutional and does not require the form of notice sought by appellant. We agree.

In ruling that Pa.R.C.P. 3129 was unconstitutional, the court below relied on *Finberg v. Sullivan*, 634 F.2d 50 (3d. Cir.1980).

*Finberg* involved a post-judgment garnishment proceeding in which the creditor attached a bank account in which there was on deposit proceeds of social security benefits. Although these funds were exempt from execution and attachment under federal law, and although the creditor was advised that these funds were exempt, the creditor refused to release the attachment. Since the garnishment rules did not advise the debtor of her exemptions and did not provide for a prompt hearing for any claimed exemption, the rules were held unconstitutional. *Finberg v. Sullivan*, supra at 51.

The court in *Finberg* recognized that the issuance and service of a writ of execution attaching funds on deposit to a debtor's bank account that were exempt under federal law

and which worked an immediate deprivation of constitutionally protected right without notice or hearing, implicated a constitutional interest of great magnitude. The *Finberg* court noted that knowledge of these exemptions is not widespread and a judgment debtor may not be able to consult with a lawyer before the freeze on his bank account creates serious problems. The court also reasoned that the creditor would not have to incur any additional expense or delay in providing constitutionally adequate notice.

As Mellon Bank points out in its brief, unlike the situation in *Finberg*, the issuance of a writ of execution against the debtor's real estate does not work as an immediate seizure of the property. Before the creditor or sheriff's sale purchaser can take possession of the debtor's real estate, the debtor must voluntarily vacate the premises or eviction proceedings must be brought against the debtor. The debtor, by this time, has already been advised in writing repeatedly that he should contact a lawyer, that he may lose valuable property rights unless he acts promptly. Unlike the situation in *Finberg*, a debtor who is served with a writ of execution has ample opportunity to consult a lawyer who can advise him of his rights and protect his interests.

Further, as Mellon points out, due process does not require notification of every possible legal consequence that may flow from any action taken by a creditor. See *Texaco, Inc. v. Short*, 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982). The right to petition to set aside a sheriff's sale for a grossly inadequate price is functionally indistinguishable from any of a number of other rights that a debtor has in connection with a sheriff's sale of his real estate.

■ Considering the foregoing we conclude that a debtor does not have a constitutionally protected right to be advised that if his property is sold for a grossly inadequate price, he can petition the court to have the sale set aside.

In reaching this conclusion, we cannot ignore the public policy considerations. In promulgating the Rules of Civil Procedure for enforcing money judgments, the Supreme

Court balanced the need to provide for procedural safeguards for debtors with the need to provide a method whereby creditors could receive prompt and relatively inexpensive satisfaction of their debts.

Creditors, in fashioning lending policies, take into consideration the method by which they can obtain payment in the event of a default. If we were to make the burden of enforcing money judgments too onerous for creditors this could be reflected in loan policies. Creditors would become more reluctant to make "small" loans, e.g. first home loans, which in turn adversely affects the consumer, particularly the residential home buyer who needs a mortgage in order to purchase a home.

There is no evidence that the procedure suggested by the court below would assist the debtor in securing relief. Rather, it would simply add to the process without attendant benefits. Therefore, we conclude that the court below erred in holding Pa.R.C.P. 3129 unconstitutional.

Order reversed insofar as it concerns the unconstitutionality of Pa.R.C.P. 3129; affirmed in all other respects.

POPOVICH, J., concurs in the result.