**BLUE BALL NATIONAL BANK, Appellee,**

v.

**Mary Jane BALMER, Appellant.**

Superior Court of Pennsylvania.

Argued June 19, 2002.

Filed Oct. 25, 2002.

---

Wiley P. Parker, Lebanon, for appellant.

Bradford J. Harris, New Holland, for appellee.

Robert W. Pontz, Lancaster, for Barley, appellee.

Before: DEL SOLE, P.J., HUDOCK and BROSKY, JJ.

DEL SOLE, P.J.

¶ 1 This is an appeal from an order denying a petition to set aside a sheriff's sale of real property based upon the adequacy of the price. We affirm.

¶ 2 In 1997, Appellant defaulted on three promissory notes and mortgages held by Blue Ball National Bank (the Bank) which encumbered four tracts of land. Approximately one month later, Appellant filed a Chapter 12 bankruptcy petition. Under a plan which followed, Appellant was to sell some or all of the property within two years. When a sale never materialized, the Bank obtained relief from the bankruptcy stay and was permitted to proceed with foreclosure. In October of 2000, the Bank commenced a mortgage foreclosure action and in December obtained a judgment in the total amount of $1,037,316.97. A public sale of the property was scheduled for March 28, 2001.

¶ 3 On March 19, 2001, Tract 1 of the four tracts of land was rezoned by the township from agricultural to light industrial. Two days later, and approximately a week before the scheduled sale, the Bank received a copy of an agreement of sale entered into by Appellant and First Capital Equities, Inc. to sell Tract 1, which was dated February 15, 2001. One day prior to the sale, Appellant delivered to the Bank another agreement of sale regarding Tract 1, dated that same date between Appellant and her sister for a purchase price of $1,500,000.00. The Bank refused to postpone the Sheriff's sale based upon either of these agreements. On the date of the sale, March 28, 2001, Kenneth Notturno of Four Star Associates offered the Bank a non-refundable payment of $100,000.00 in certified funds in return for the postponement of the sale. In return Notturno sought 30 days to put together a financing package to purchase the Bank's lien positions and another 30 days thereafter to close on the property. The Bank refused Notturno's offer but counter-offered with a request for a non-refundable payment of $200,000.00 and settlement within a total of 30 days. Notturno did not accept the counter-offer and the sale proceeded as scheduled.

¶ 4 At the public sale of the property the sheriff initially sought separate bids for the different tracts, but when the high bids offered were too low to satisfy the debt to

the Bank, the sheriff offered all the tracts together. Robert Barley, Thomas Barley and Abram Barley, Jr. (the Barleys) were the successful bidders for the property at a price of $1,249,000.00. They immediately placed a deposit with the Sheriff in the amount of $249,000.00.

¶ 5 Prior to the recording and delivery of a deed to the Barley's, Appellant filed a petition to set aside the sheriff's sale alleging that the $1,249,000.00 bid accepted was grossly inadequate in view of the $1,500,000.00 offered by her sister for Tract 1 alone. A hearing was held on the petition at which the parties stipulated to the qualification of Richard G. Cornogg and Rudy DeLaurentis as expert witnesses, and to an aggregate fair market value of $199,500.00 for Tracts 2 and 4. The parties also did not dispute the validity of the proceedings conducted by the sheriff for this sale.

¶ 6 At the hearing Appellant's expert appraised Tract 1 at $1,600,000.00 and Tract 3 at $400,000.00. The Bank's expert, Mr. DeLaurentis appraised Tract 1 at $1,108,000.00 and Tract 3 at $336,000.00. Appellant also offered evidence that the Barley Group had, since the time of the sheriff's sale, entered into an agreement of sale regarding Tracts 1 and 2 for the sum of $1,175,000.00 and a separate agreement to sell Tract 3 for $450,000.00. The trial court accepted the testimony of the Bank's expert and ruled that the purchase price of $1,249,000.00 was not grossly inadequate. The court also rejected Appellant's suggestion that the Bank had an obligation to delay the sheriff's sale because of its receipt of agreements of sale regarding Tract 1 executed by Appellant shortly prior to the sheriff's sale. This appeal followed.

¶ 7 On appeal Appellant lists a single issue: "Does the gross inadequacy of the bid achieved at sheriff's sale as well as other circumstances mandate the setting aside of the March 28, 2001 sheriff sale?" Appellant's Brief at 4. Specifically, Appellant argues that the inadequacy of the sale price is demonstrated by the fact that within a month of the sheriff's sale the Barley Group entered into agreements of sale for three of the four tracts. Appellant submits that the price of the property as set forth in the agreements combined with the estimated value of the remaining tract would result in a $495,000.00 profit for the group when sold. Appellant also claims the result reached by the trial court is unconscionable as it tacitly approved the Bank's refusal to adequately consider the proffered agreements of sale presented to it prior to the sheriff's sale and that the result is unsupported by case law.

¶ 8 The purpose of a sheriff's sale in mortgage foreclosure proceedings is to realize out of the land, the debt, interest, and costs which are due, or have accrued to, the judgment creditor. *Kaib v. Smith*, 454 Pa.Super. 67, 684 A.2d 630 (1996). A sale may be set aside upon petition of an interested party where "upon proper cause shown" the court deems it "just and proper under the circumstances." Pa.R.C.P. 3132. The burden of proving circumstances warranting the exercise of the court's equitable powers is on the petitioner. *Bornman v. Gordon*, 363 Pa.Super. 607, 527 A.2d 109, 111 (1987). Courts have entertained petitions and granted relief where the validity of sale proceedings is challenged, or a deficiency pertaining to the notice of sale exists or where misconduct occurs in the bidding process. *National Penn Bank v. Shaffer*, 448 Pa.Super. 496, 672 A.2d 326 (1996).

¶ 9 Where a sale is challenged based upon the adequacy of the price our courts have frequently said that mere inadequacy of price standing alone is not a

sufficient basis for setting aside a sheriff's sale. *Fidelity Bank v. Pierson*, 437 Pa. 541, 264 A.2d 682 (1970). However where a "gross inadequacy" in the price is established courts have found proper grounds exist to set aside a sheriff's sale. *Capozzi v. Antonoplos*, 414 Pa. 565, 201 A.2d 420, 422 (1964). The courts have traditionally looked at each case on its own facts. *Scott v. Adal Corp.*, 353 Pa.Super. 288, 509 A.2d 1279, 1283 (1986). "It is for this reason that the term 'grossly inadequate price' has never been fixed by any court at any given amount or any percentage amount of the sale." *Id.* Further, it is presumed that the price received at a duly advertised public sale is the highest and best obtainable. *First Federal Sav. & Loan Assoc. v. Swift*, 457 Pa. 206, 321 A.2d 895 (1974). When reviewing a trial court's ruling on a petition to set aside a sheriff's sale, it is recognized that the court's ruling is a discretionary one and it will not be reversed on appeal unless there is a clear abuse of that discretion. *Federal Sav. Bank v. CPM Energy Sys. Corp.*, 422 Pa.Super. 308, 619 A.2d 371 (1993).

¶ 10 As noted, Appellant does not challenge the conduct of the proceedings in this case. Rather she claims that the price received for the property at the sheriff's sale was grossly inadequate. In ruling on Appellant's petition the court had the benefit of testimony from two experts. The court noted that the Barleys' appraiser viewed Tract I as essentially agricultural farmland concluding that it had the potential for industrial development possibly about ten years in the future. He placed a fair market value of $1,108,000.00 on Tract 1 as of the date of the sheriff's sale. Appellant's appraiser viewed the possibility of light industrial development on Tract 1 in as few as three years and determined its fair market value as $1,600,000.00. The trial court considered the testimony regarding the lack of public water and sewer to Tract 1 and concluded that substantial upgrading of the system beyond mere connection/hook-up was necessary before the land would be serviceable for light industrial use. Because no concrete plans for the extension of those utilities to the property were offered, the court found it was "pure speculation" to determine when public water and sewer utilities would be available. Trial Court Opinion, 8/27/01, at 5. The court ruled that Appellant had presented "no credible evidence" that the land could be developed in three to seven years. *Id.* Therefore, it found the appraisal of the Barleys' expert to be "a more accurate representation of the true fair market value of Tract 1." Trial Court Opinion, 8/27/01, at 6. The court also accepted this expert's appraisal on the remaining tracts and his ultimate conclusion that the total value of all four Tracts is $1,643,500.00.

¶ 11 The trial court compared its accepted valuation of $1,643,500.00 to the actual $1,249,000.00 purchase price and calculated that the purchase price represents 76% of the accepted appraisal. The court concluded that this percentage could not be considered "grossly inadequate" or "shocking to the conscience" of the court. Trial Court Opinion at 7. As an appellate court we recognize that the trial court has the authority to determine the credibility of witnesses. *Ludmer v. Nernberg*, 433 Pa.Super. 316, 640 A.2d 939 (1994). The trial court accepted as credible the appraisal offered by the Barleys' expert and provided sound reasons based upon the current status of the land why it found his valuation sound. We will not disturb this finding. We also will not disturb the court's ultimate conclusion that the price obtained at the sheriff's sale was not grossly inadequate compared to the true value of the property.

¶ 12 Appellant argues that the better evidence of the true value of the property can be obtained from the sales agreement subsequently entered into for the sale of three out of four of the tracts. Accepting the values set forth in those agreements and the calculation evidence offered on the retained tract at $119,000.00, the total value would be $1,744,000.00. The price obtained at the sheriff's sale was 72% of this estimated value. While the court did not utilize these figures in its opinion, the trial court did remark that had it accepted Appellant's expert's appraisal of $2,199,500.00 for the four tracts, the sheriff's sale price would represent 57% of the fair market value. The court found that where the sheriff's sale did not involve any invalidities, it could not even find this figure (57%) to be grossly inadequate.

¶ 13 We accept the conclusion reached by the trial court and find under the facts presented that the trial court did not abuse its discretion in refusing to set aside the sheriff's sale based upon Appellant's claim that the price was grossly inadequate. The court had before it the amount due the Bank under its mortgage foreclosure action, the testimony of two experts regarding the fair market value of this property and testimony about its proposed resale. Further, it is appropriate to take into account that the appellate courts have noted that it is the purchaser who takes all of the risk at a sheriff's sale *National Penn Bank v. Shaffer*, 448 Pa.Super. 496, 672 A.2d 326. These sales are advertised and open to the public with the sale going to the highest bidder. The high bidder, however, takes its purchase along with inherent risks, for the future value of property is not certain. In this case, although the Barleys may turn a profit from their purchase, their action is not without risk, and the price they obtain upon resale does not alone control. However even taking into account the resale price, the price bid by the Barleys at the sheriff's sale was approximately 72 to 75 percent of the values submitted. The court's decision on these facts was not an abuse of discretion.

¶ 14 We also find no abuse of discretion in the trial court's refusal to find that the Bank had an obligation to delay the sheriff's sale after it had received copies of the agreements of sale executed by Appellant and First Capital and Appellant and her sister. The trial court, on pages 8–10 in its opinion recounts the Bank's history of attempts to collect on Appellant's debt and explains why it was reasonable for the Bank to refuse to postpone the sale upon receipt of these agreements only days before the sale. We find the reasoning expressed by the trial court on this point sound. The court's reasoning likewise applies to the Bank's refusal to postpone the sale when on the day of the sale it was presented with an offer of certified funds in exchange for a postponement. Appellant claims the Bank acted in bad faith by "its refusal to entertain even the most reasonable proposal." Appellant's Brief at 16. However, the Bank did entertain this proposal and made a counter-offer which was refused. Appellant's claim fails.

¶ 15 Order affirmed.