J-S89004-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| M & T BANK, | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | | |
| v. | | |
| ACLI TRADING, LLC AND CORESTATES GROUP LLC, | | |
| Appellees | | No. 816 EDA 2016 |

Appeal from the Order Entered March 3, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 150201107

BEFORE:  SHOGAN, MOULTON, and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED FEBRUARY 13, 2017**

Appellant, M & T Bank, appeals from the order denying its petition to set aside sheriff's sale in this mortgage foreclosure action initiated against Appellee, ACLI Trading, LLC, at which the foreclosed property was sold to Appellee, Corestates Group, LLC ("Corestates").   After careful review, we affirm.

The trial court summarized the history of this case as follows:

> This case commenced [on] February 2, 2015, with the filing of a complaint in mortgage foreclosure against ACLI Trading Company and the Property located at 4640 Large Street, Philadelphia Pennsylvania, 19124.

---

[*]  Former Justice specially assigned to the Superior Court.

On April 20, 2015, [M & T Bank] filed a Motion for Alternative Service, which was granted May 5, 2015.

On May 21, 2015 and May 22, 2015, [M & T Bank] filed Affidavits of Service of the Praecipe to Reinstate the Complaint as well as the Complaint on ACLI Trading, Inc.

On June 18, 2015, [M & T Bank] filed a Praecipe to Entry of Judgment by Default.

On July 23, 2015, [M & T Bank] filed an Affidavit of Service of Notice of Sale by posting the premises.

On July 24, 2015, [M & T Bank] filed an Affidavit of Service of Notice of Sale by Posting Premises, Certified Mail, and First Class Regular Mail.

On October 6, 2015, the Property was sold at Sheriff's Sale to [Corestates] for $180,000.00.

On October 7, 2015, [M & T Bank] filed a [Petition] to Set Aside Sheriff's Sale. The petition averred that [M & T Bank's] counsel had received bidding instructions for a maximum of $318,967.30; that the fair market value of the Property was $425,000.00; that a representative of [M & T Bank] attended the sale; that there were multiple third party bidders bidding on the Property; that [M & T Bank's] representative followed standard and customary procedure to bid; that the auctioneer sold the Property despite [M & T Bank's] representative remaining standing and indicating she was prepared to bid $319,000.00; that the manner in which the sale was conducted was highly irregular and prejudicial as the final bid was grossly inadequate given the fair market value of the Property. [M & T Bank] provided an Affidavit from its representative who had attended the sale. Thus, [M & T Bank] requested this court set aside the sale on an equitable basis.

On October 27, 2015, [Corestates] filed a Motion to Intervene, and an Answer in Opposition to the Motion to Set Aside Sheriff's Sale. In its Motion to Intervene, [Corestates] averred that it was the successful third party bidder on the Property, and that it sought leave to intervene to protect its interest in the Property. In its Answer in Opposition, [Corestates] argued that the sale was conducted properly; that

the auctioneer knocked down the Property by the fall of the hammer and allowed for and provided a verbal three (3) count; that the sale price was not grossly inadequate as courts had concluded that "grossly inadequate" meant ten (10) per cent or less of the established market value and in the instant case the sale price was 42.35% of the fair market value; that the competitive bidding process was not impacted as no other third party bidders had complained.

On November 18, 2015, [the trial] court scheduled an evidentiary hearing on the Motion to Set Aside Sheriff's Sale.

On December 18, 2015, [M & T Bank] filed a Reply in Support of its Motion to Set Aside Sheriff's Sale, arguing that [Corestates's] brief relied on unpublished case law; that [Corestates's] answer was not properly verified; that [Corestates] had provided no evidence; and that the sale price was grossly inadequate because it was below both the market value of the Property and the outstanding debt to which the sale was intended to satisfy.

On December 22, 2015, [Corestates] filed a Praecipe to Supplement its Motion to Intervene and a Praecipe to Supplement its Answer in Opposition to the Motion to Set Aside, namely, to add proper verifications.

On March 2, 2016, following a number of continuances, [the trial] court heard oral argument and considered testimony on the Motion to Set Aside.

* * *

On March 3, 2016, [the trial] court denied [M & T Bank's] Motion to Set Aside.

Trial Court Opinion, 5/27/16, at 1-3, 7. This timely appeal by M & T Bank followed. On March 10, 2016, M & T Bank filed a motion to stay proceedings seeking to stay delivery of a sheriff's deed to Corestates pending the outcome of this appeal, which the trial court granted on April 25, 2016. Both M & T Bank and the trial court have complied with Pa.R.A.P. 1925.

M & T Bank presents the following issues for our review:

> I. Did the trial court abuse its discretion in denying M & T's petition to set aside the sheriff's sale under Pa.R.C.P. 3132 where there is evidence showing the sale was abruptly cut off, hindering competitive bidding and rendering the sale void?
>
> II. Did the trial court abuse its discretion in denying M & T's petition to set aside the sheriff's sale under Pa.R.C.P. 3132 due to the gross inadequacy of the sale price in comparison to the underlying judgment amount and the market price of the subject property?
>
> III. Did the trial court fail to appropriately exercise its equitable discretion in denying Appellant's petition to set aside the sheriff's sale pursuant to Pa.R.C.P. 3132 where the resulting unfair prejudice to M & T far outweighs the absence of any harm whatsoever to Appellee if the sale was reset?

M & T Bank's Brief at 3 (renumbered for ease of discussion).

Initially, we observe that each of M & T Bank's issues challenge whether the trial court erred in denying its petition to set aside the sheriff's sale. Pennsylvania Rule of Civil Procedure 3132 governs petitions to set aside sheriff's sales and provides as follows:

> Upon petition of any party in interest before delivery of the personal property or of the sheriff's deed to real property, the court may, upon proper cause shown, set aside the sale and order a resale or enter any other order which may be just and proper under the circumstances.

Pa.R.C.P. 3132.

Our Supreme Court has long held that a petition to set aside a sheriff's sale is governed by equitable principles. *Doherty v. Adal Corp.*, 261 A.2d 311, 313 (Pa. 1970). Equitable principles are applied to sheriff's sales because "[t]he purpose of a sheriff's sale in mortgage foreclosure

- 4 -

proceedings is to realize out of the land, the debt, interest, and costs which are due, or have accrued to, the judgment creditor." *Kaib v. Smith*, 684 A.2d 630, 632 (Pa. Super. 1996). Moreover, we are mindful that the petitioner has the burden of proving circumstances warranting the exercise of the trial court's equitable powers. *Bornman v. Gordon*, 527 A.2d 109, 111 (Pa. Super. 1987). As a general rule, the burden of proving circumstances warranting the exercise of the court's equitable powers is on the applicant, and the application to set aside a sheriff's sale may be refused because of the insufficiency of proof to support the material allegations of the application, which are generally required to be established by clear evidence. *Id*. This Court will not reverse the trial court's decision absent an abuse of discretion. *Id*. An abuse of discretion occurs where, for example, the trial court misapplies the law. *Bank of America, N.A. v. Estate of Hood*, 47 A.3d 1208, 1211 (Pa. Super. 2012) (citing *Warmkessel v. Heffner*, 17 A.3d 408, 413 (Pa. Super. 2011)).

In its first issue, M & T Bank argues that the trial court erred in denying its petition to set aside the sheriff's sale because there was a clear deviation from the standard procedure in conducting the sale of the property. M & T Bank's Brief at 12. M & T Bank contends that the auctioneer conducted the sale in an irregular manner by arbitrarily cutting off the competitive bidding, thus requiring that the sale of the property be set aside. *Id*.

Irregularities in a sheriff's sale proceedings have been found to be grounds to set aside a sheriff's sale under Pa.R.C.P. 3132. ***Allegheny County v. Golf Resort, Inc.***, 974 A.2d 1242, 1246 (Pa. Cmwlth. 2009).[1] "[I]rregularities may appear in the conduct of either the sheriff's office representative conducting the sale or the parties to the transaction." ***Id***. (citing ***McKenna v. Sosso***, 745 A.2d 1 (Pa. Super. 1999)).

The trial court painstakingly summarized the testimony regarding the actual sheriff's sale proceedings, which was offered at the set-aside hearing, as follows:

> Beatrice Rile, a foreclosure manager with the law firm of Mettleman, Weinroth, and Miller [who was bidding on behalf of M & T Bank], testified that she had worked for the firm for eighteen (18) years. N.T. 3/2/16 at 9-10. She has attended around fifty (50) sales on behalf of the firm's clients as an attorney on writ, and is familiar with the sale and bidding process. N.T. 3/2/16 at 10-11. Rile stated the auctioneer announces the book and writ for the Property being sold, open with the cost, and if there are competitive bidders they will bid in increments to obtain the bid; if the max bid has not been reached, they continue to bid in increments to meet the bid that their client provides them. N.T. 3/2/16 at 11, 17. When bidding, she always stands and remains standing until she is done bidding. N.T. 3/2/16 at 11. The maximum bid is not announced, and is not public information. N.T. 3/2/16 at 12-13. If the third party bids are not near the maximum bid, Rile will continue to stand and bid until the bids

---

[1] "Although decisions of the Commonwealth Court are not binding on this Court, we may rely on them if we are persuaded by their reasoning." ***NASDAQ OMX PHLX, Inc. v. PennMont Secs.***, 52 A.3d 296, 308 n.7 (Pa. Super. 2012); ***see also Commonwealth v. Rodriguez***, 81 A.3d 103, 107 n.7 (Pa. Super. 2013) ("Although the decisions of the Commonwealth Court are not binding upon this Court, they may serve as persuasive authority").

reach that maximum bid, after which she will allow competitive bidders to continue bidding. N.T. 3/2/16 at 15-16.

Rile testified that on the date of the sale, there was competitive bidding and a packed house of more than one hundred (100) people, and she sat in the middle of the room, approximately five (5) to seven (7) rows back. N.T. 3/2/16 at 15-17. She stated the competitive bidding stopped and as she was going to announce her next bid, the auctioneer was already saying, "Going once, going twice," and as Rile attempted to speak, the auctioneer stated, "Sold to third-party for $180,000." N.T. 3/2/16 at 15-16. Rile then stated, "I'm not done bidding," but the auctioneer stated, "the case is closed." N.T. 3/2/16 at 16. Rile identified herself as being from the attorney's office, and a representative from the sheriff's office stated she could put in a third-party bid, which Rile stated she did not wish to do. N.T. 3/2/16 at 16. During a deposition conducted prior to the instant hearing on January 29, 2016, Rile stated she had said, "Wait a minute, I'm not done bidding" as the auctioneer was stating "going twice." N.T. 3/2/16 at 19-20. In that deposition, Rile stated that she had not heard anyone say "wait a minute" during bidding before. N.T. 3/2/16 at 22. During cross[-] examination, she stated that she "may have" started to announce a dollar amount, but she could not remember. N.T. 3/2/15 at 23.

Michael Silverman, managing director of Integra Resources, a company that performs real estate evaluations, testified for [M & T Bank]. N.T. 3/2/16 at 26. He stated that he conducted an appraisal of 4640 Large Street, the Property in question. N.T. 3/2/16 at 27. The property is a 31,490 square foot loft industrial building, and is a shell. N.T. 3/2/16 at 27-28. In September, 2015, based upon an examination of the outside of the Property, Silverman appraised the Property at $300,000.00 and its disposition value at $225,000.00. N.T. 3/2/16 at 29-30, 34. Silverman was aware of open fire code violations related to the Property. N.T. 3/2/16 at 32. Silverman worked deferred maintenance into his appraisal, but did not include the fire code violations in the deferred maintenance category, because such issues were not easily repaired. N.T. 3/2/16 at 36.

[Corestates] argued the sale was conducted properly and that [M & T Bank's] argument was solely that the sale was

conducted too quickly and that the price was not inadequate, as the bid was approximately forty-two (42) percent of the value provided in the motion and sixty (60) percent of the value provided in evidence at the hearing. N.T. 3/2/16 at 7, 75. [Corestates] argued that there was no irregularity or any procedural misconduct in the sale. N.T. 3/2/16 at 74. Consequently, given that the price was not grossly inadequate and that there was no procedural irregularity, there was no reason to set aside the sale. N.T. 3/2/16 at 76.

Ilya Rabovetsky, the owner of Corestates Group, LLC, testified for [Corestates]. N.T. 3/2/16 at 38. He testified that he is involved in purchasing properties at sheriffs sale and renovating them for sale. N.T. 3/2/16 at 38-39. He has been attending almost every sheriff's sale for the past ten (10) years. N. T. 3/2/16 at 39.

Rabovetsky testified that he attended the October 6, 2015 sale, and that he bid on the Property located at 4640 Large Street, Philadelphia, Pennsylvania, as soon as he realized it was being auctioned. N.T. 3/2/16 at 39-40. He was unaware of the bank's upset price, but he did come prepared with information on its location, its size, and the fact that fire code violations existed against the Property. N. T. 3/2/16 at 40. Rabovetsky viewed the bid of $180,000.00 as a risk, as he had limited information on the Property, and that it had outstanding violations, needed a lot of work, and was not in the best area. N.T. 3/2/15 at 40. There were other bidders on the Property, but at the last three bids, it was solely Rabovetsky and the bank. N.T. 3/2/16 at 41. Rabovetsky testified that the sale was a large sale of one thousand (1,000) properties, that it was crowded, and that it was conducted the same as any other sale, and that no one else attempted to enter a bid after him. N.T. 3/2/16 at 41. Following placing the successful bid, he paid ten (10) per cent on the bid. N. T. 3/2/16 at 42. Also following the successful bid, Rabovetsky received a quote for cost to replace the sprinkler system in the Property, per the violations, at $200,000.00. N.T. 3/2/16 at 44-45.

Lori Santiago, a title clerk at City Line Abstract Company and a deputy in the Philadelphia Sheriff's Department until 2008, testified for [Corestates]. N.T. 3/2/16 at 51. Santiago also conducts sheriff's sales for the sheriff's department as an auctioneer. N.T. 3/2/16 at 51-52. She conducted the auction

for the subject Property on October 6, 2015. N.T. 3/2/16 at 52. Santiago testified that she conducts the sales standing on an elevated platform, with a microphone. N.T. 3/2/16 at 52. Santiago is familiar with Rile, as she has been attending the sale for years, and saw and heard her at the sale that day. N.T. 3/2/16 at 53.

Santiago testified that the Property was called by file number, book, and writ number, and that the opening bid is what is owed to the city in real estate, water, or gas liens. N.T. 3/2/16 at 53. The Property's opening bid was $29,000.00; a third party bidder bid $30,000.00. N.T. 3/2/16 at 54. The next acceptable bid is from the attorney on the writ, and Rile did announce her bid, though there were several other bidders engaged. N.T. 3/2/16 at 54. Towards the end, the only bidders remaining were the Corestates Group and Rile, who seemed distracted and was reading a book when [Corestates] bid $180,000.00. N.T. 3/2/16 at 54. Santiago stated she could not hold the bids, so she said, "Going once, going twice," but Rile did not respond. N.T. 3/2/16 at 55. Santiago then stated the Property had been sold to Corestates Group. N.T. 3/2/16 at 55. Rile said she was not finished bidding, but Santiago stated that she had given the count and instructed her to see the sheriff. N.T. 3/2/16 at 55. Santiago assumed Rile would place a second bid, meaning that the first bidder would be locked into settling the matter within thirty (30) days and then, if the matter is not settled, the first bidder would lose the benefit of their deposit. N.T. 3/2/16 at 55-56. Santiago testified she did not wait to see if Rile did so, as it was a busy day with a sale of one thousand (1,000) properties. N.T. 3/2/16 at 56.

Santiago testified that she gave the count in the same rhythm and speed as she always does. N.T. 3/2/16 at 56-57. Santiago testified that as soon as there is a lull, she will end the sale after giving the "once, twice" warning. N.T. 3/2/16 at 57. Santiago testified she gave Rile a full opportunity to bid, but that as the hammer fell, Rile was not paying attention. N.T. 3/2/16 at 58, 60.

Captain Richard Verrecchio, a sheriff's representative assigned to the Real Estate Settlement Unit, testified for [Corestates]. N.T. 3/2/16 at 63. He is assigned to the mortgage and tax sales, where he enforces the writ of executions, decrees for tax sales to make sure that the sale was

fair and equitable. N.T. 3/2/16 at 63. He was present at the instant sale on October 6, 2015, at the front of the room with his staff. N.T. 3/2/16 at 64. He recognized Rile, having seen her at many sales. N.T. 3/2/16 at 64. He did not see the bid, but was approached by Rile following the sale, whereupon Verrecchia asked her if she wished to place a second bid. N.T. 3/2/16 at 65. Rile stated she was not sure. N.T. 3/2/16 at 65.

Rick Tyer, an employee of the Philadelphia Sheriff's Office, testified that he is the Director of Real Estate for the office and participates in and conducts Sheriff's Sales. N.T. 3/2/16 at 68. His role is to sit with the auctioneer and ensure that they conduct a fair sale. N.T. 3/2/16 at 69. Tyer attended the October 6, 2015 sale, and was sitting in the front of the room behind Rile, who is familiar to him from previous sales. N.T. 3/2/16 at 69-70. He did not have direct communication with Rile regarding the bid, but from his own observations, believed her bid untimely. N.T. 3/2/16 at 71. In his experience, Tyer makes determinations to challenges of the sale at the time of sale, and has never reopened the bidding at the request of the attorney on the writ, to avoid prejudice to third–party bidders. N.T. 3/2/16 at 71.

Trial Court Opinion, 5/27/16, at 3-7.

In addressing M & T Bank's claim that procedural irregularities occurred that required a set aside of the sheriff's sale, the trial court presented the following apt analysis:

[M & T Bank] cannot show a procedural irregularity requiring [the trial] court to set aside the sale. Regarding the procedure of the sale itself, based upon the evidence and the testimony presented during the hearing, there was no irregularity requiring the set aside of the sale. In the instant case, [the trial] court heard extensive testimony and argument regarding the manner in which the sheriff's sale was conducted on October 6, 2015. [M & T Bank's] representative testified that the sale was conducted irregularly and that it was concluded abruptly before she could place a bid. [Corestates] presented testimony from four (4) separate witnesses, including the auctioneer and representatives of the sheriff's office, to testify that the sale was conducted properly and in accordance with the manner all sales

- 10 -

are conducted. Consequently, there was no reason to set aside the sale.

Trial Court Opinion, 5/27/16, at 9. Upon review of the certified record, we are constrained to agree with the trial court that the record supports its determination that there were no irregularities in the conduct of the sale of the property that would necessitate a set aside of the sheriff's sale. Accordingly, we conclude that M & T Bank's contrary claim lacks merit.

M & T Bank next argues that the trial court erred in denying its petition to set aside the sheriff's sale because the sale price of the property was grossly inadequate. M & T Bank's Brief at 13-14. M & T Bank asserts that the sale price of $180,000.00 is inadequate because it is sixty percent of the appraised value of the property and only fifty-seven percent of the outstanding judgment amount and warrants reversal of the trial court's decision. *Id*.

"Pennsylvania law is clear that mere inadequacy of price is not sufficient reason to set aside a Sheriff's Sale." *Scott v. Adal Corp.*, 509 A.2d 1279, 1283 (Pa. Super. 1986). Rather, the sale price must be "grossly inadequate" in order to set aside a sheriff's sale. *Id*. The courts have traditionally looked at each case on its own facts. *Id*. It is for this reason that the term "grossly inadequate price" has never been fixed by any court at any given amount or any percentage amount of the sale. *Id*. Furthermore, it is well settled that the price received at a duly advertised public sale is the highest and best price obtainable. *Bank of America, N.A.*

*v. Estate of Hood*, 47 A.3d at 1211 (citing ***Blue Ball National Bank v. Balmer***, 810 A.2d 164, 166-167 (Pa. Super. 2002)). In addition, we observe that "Pennsylvania courts have concluded that a sheriff's sale price is grossly inadequate where sale price was a small percentage-roughly ten percent or less-of the established market value." ***Bank of America, N.A. v. Estate of Hood***, 47 A.3d at 1212.

The trial court discussed M & T Bank's allegation that the sale price of the property at the sheriff's sale was grossly inadequate, as follows:

> In the instant case, evidence introduced at the hearing showed that the Property was valued at approximately $300,000.00. The judgment was for $313,961.13. The winning bid of $180,000.00 is approximately sixty (60) per cent of the valuation provided by Appellant, and approximately [fifty-seven (57)] percent of the judgment amount. Recently, the Superior Court of Pennsylvania has held that a purchase price of forty-four (44) percent does not constitute a gross inadequacy of price. ***Bank of Am., N.A. v. Estate of Hood***, 2012 PA Super 70, 47 A.3d 1208, 1212-13 (2012). While in the instant case the purchase price was still below the amount of the judgment, [fifty-seven (57)] or sixty (60) percent of the fair market value does not constitute a gross inadequacy.

Trial Court Opinion, 5/27/16, at 9. We agree with the trial court's conclusion that the instant sheriff's sale price of $180,000.00, which is sixty percent of the property's appraised value of $300,000.00, is not grossly inadequate. Accordingly, M & T Bank has failed to establish that the trial court abused its discretion. Hence, this claim fails.

In its final issue, M & T Bank argues that the trial court abused its discretion in denying the petition to set aside the sheriff's sale because the

prejudice suffered by M & T Bank far outweighs any harm to Corestates in the event of a resale of the property. M & T Bank's Brief at 14. M & T Bank contends that if the sale is permitted to stand, the bank will not realize the best price obtainable on the property, thereby suffering prejudice. *Id*.

As we previously observed, a petition to set aside a sheriff's sale is governed by equitable principles. *Doherty*, 261 A.2d at 313. We reiterate that "[a] sale may be set aside upon petition of an interested party where 'upon proper cause shown' the court deems it 'just and proper under the circumstances.'" *Blue Ball National Bank*, 810 A.2d at 166 (citing Pa.R.C.P. 3132). "Courts have entertained petitions and granted relief where the validity of sale proceedings is challenged, or a deficiency pertaining to the notice of sale exists or where misconduct occurs in the bidding process." *Blue Ball Nat'l Bank*, 810 A.2d at 166. *Compare Merrill Lynch Mortg. Capital v. Steele*, 859 A.2d 788, 792 (Pa. Super. 2004) (reversing refusal to set aside sheriff's sale upon deciding equities clearly warranted the grant of relief where judgment creditor received the money that it was owed when the mortgage pay-off proceeds were sent by the appellant to the mortgage creditor before the sheriff's sale, thereby negating the need for the property to be sold at sheriff's sale). Moreover, we note that it is presumed that the price received at a duly advertised public sale is the highest and best obtainable. *Provident Nat'l Bank, N.A. v. Song*, 832 A.2d 1077, 1081 (Pa. Super. 2003) (quoting *Blue Ball*

*National Bank*, 810 A.2d at 167). In addition, "[t]he purchaser at a sheriff's sale assumes some risk concerning the property's future value[, and] we declined to deprive the purchaser of the reward he received for assuming that risk." *Bank of America, N.A. v. Estate of Hood*, 47 A.3d at 1211 (citing *Blue Ball National Bank*, 810 A.2d at 168).

Here, as we previously discussed, the trial court did not abuse its discretion in determining there was no misconduct in the bidding process that would warrant the granting of M & T Bank's petition to set aside the sheriff's sale. Furthermore, M & T Bank's claim that the sale price realized from the sheriff's sale was not the best obtainable price is nothing more than an unsubstantiated allegation in light of the presumption that "the price received at a duly advertised public sale is the highest and best obtainable." *Provident Nat'l Bank, N.A.*, 832 A.2d at 1081. Finally, M & T Bank's bald conclusion that Corestates will not suffer prejudice from being forced to purchase the property at a subsequent sheriff's sale ignores the potential reward that Corestates stands to receive from assuming the risk of purchasing the property at the duly held sheriff's sale. *Bank of America, N.A. v. Estate of Hood*, 47 A.3d at 1211. Consequently, we conclude that M & T Bank has failed to meet its burden of proof to show that the trial court abused its discretion in refusing to set aside the sheriff's sale.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/13/2017