J-S80003-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SUN WEST MORTGAGE COMPANY, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANTIWONE M. SANDERS, | |
| Appellant | No. 3504 EDA 2017 |

Appeal from the Order Entered October 3, 2017
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): Case# 150301423

BEFORE:  BENDER, P.J.E., BOWES, J., and NICHOLS, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED MARCH 28, 2019**

Appellant, Antiwone M. Sanders, appeals *pro se* from the trial court's October 3, 2017 order denying his petition to set aside the sheriff's sale of his property at 177 South 55th Street, Philadelphia, Pennsylvania (referred to herein as "the Property").  We affirm.

The trial court summarized the factual and procedural background of this case as follows:

On March 10, 2015, … Sun West Mortgage Company, Inc. ("Sun West")[,] commenced a mortgage foreclosure action against Mr. Sanders for nonpayment of a mortgage on the Property.  Shortly after commencing the action, Sun West assigned the mortgage to Lakeview Loan Servicing, LLC ("Lakeview").[1]  After failing to locate Mr. Sanders to affect original service of the complaint, Sun West moved for alternative service.  The [c]ourt granted the motion, ordering that the complaint be posted at the Property and mailed to Mr. Sanders at his last-known address by regular and certified mail, return receipt requested.[2]  Sun West reinstated the

complaint and promptly affected original service in compliance with the order. Mr. Sanders did not respond to the complaint.

> [1] Sun West assigned the mortgage to Lakeview on April 24, 2015. Lakeview recorded the assignment on May 6, 2015. On August 5, 2016, Sun West filed a praecipe with the [c]ourt to substitute Lakeview as plaintiff.[1]

> [2] Sun West performed a good faith investigation to determine the whereabouts of Mr. Sanders. Mr. Sanders's last known address as of April 21, 2015 was 255 Scottdale Road, Unit A109, Lansdowne, Pennsylvania 19050.

Sun West did not initially seek a default judgment. Sun West instead reinstated the complaint and, on November 18, 2015, through its process server, attempted and failed to personally serve the complaint on Mr. Sanders at the Property. A Delaware County deputy sheriff finally personally served the complaint on Mr. Sanders on November 22, 2015[,] at his last-known address. Mr. Sanders again failed to respond to the complaint.

Mr. Sanders made his first filing in this matter to preliminarily object to the complaint on January 14, 2016 — more than six months after Sun West affected original service pursuant to the [c]ourt's May 26, 2015 order. The [c]ourt overruled Mr. Sanders's preliminary objections and ordered him to answer the complaint. Mr. Sanders answered as ordered and the [c]ourt scheduled the matter for trial before the Honorable Gene D. Cohen on October 24, 2016. Despite ample notice, Mr. Sanders failed to appear at trial. Judge Cohen entered default judgment against Mr. Sanders for $116,941[,] and the [c]ourt, on praecipe, issued a writ of execution directing the Philadelphia County Sheriff to sell the Property to satisfy the judgment, costs and interest.

Mr. Sanders appealed to the Superior Court without first petitioning the [c]ourt to open or strike the default judgment. Judge Cohen ordered[,] and Mr. Sanders filed[,] a statement of errors complained of on appeal. Judge Cohen, in support of his decision to enter default judgment post trial, explained that the appeal should be quashed because: (1) Mr. Sanders did not file a petition to open or strike the default judgment before filing his appeal, as required by Pennsylvania Rule of Civil Procedure 206.1;

---

[1] Although Sun West filed a praecipe to substitute Lakeview as the plaintiff, it did not seek to have the caption amended.

and (2) Mr. Sanders's statement of errors was "rambling and incoherent, making it impossible for the [c]ourt to properly address whatever issues he wished to raise." The Superior Court quashed Mr. Sanders's appeal as interlocutory, noting that an appeal may be taken from a petition to strike or open default judgment.

On February 13, 2017, Mr. Sanders [filed] a Suggestion of Bankruptcy seeking an automatic stay of the sheriff's sale.[3] Lakeview postponed the sheriff[']s sale during the pendency of the bankruptcy proceeding, which the U.S. Bankruptcy Court ultimately dismissed on April 17, 2018. (Dismissal Order, U.S. Bankruptcy Court (EDPA) Dkt. 17-18216AMC at 04/17/18). In its order, the U.S. Bankruptcy Court noted that Victor A. Milbourne, the purported owner of the Property, had filed three prior bankruptcy cases, all of which had been dismissed. The bankruptcy court barred Mr. Milbourne from filing any future bankruptcy cases for a period of 365 days without first seeking court approval. Lakeview then affected service of the notice of the sale of the Property on Mr. Sanders in accordance with this [c]ourt's service order. Mr. Sanders made no attempt to stay the sale again. On July 11, 2017, the Philadelphia County Sheriff sold the Property to McCabe, Weisberg, and Conway, P.C. for $79,100.

[3] The bankruptcy petition attached to the Suggestion of Bankruptcy was filed by Victor Allen Milbourne "*Ex Rel* 'Antiwone M. Sanders.'" Mr. Sanders stated that Mr. Milbourne was the "real owner" of the Property, and that consequently, "an automatic stay is now in effect." Mr. Sanders did not attach a deed conveying the Property to Mr. Milbourne. The chain of title instead shows that Victor A. Milbourne and Cynthia Milbourne-Cassett conveyed the Property to Mr. Sanders on January 24, 2013. Nothing on the record suggests that Mr. Sanders then conveyed the Property back to Mr. Milbourne or that his Suggestion of Bankruptcy was anything more than a ploy to administratively stay the sale.

On August 10, 2017, Mr. Sanders petitioned the [c]ourt to set aside the sheriff's sale.[4] The [c]ourt denied Mr. Sanders's petition, which he timely appealed to the Superior Court.

[4] Lakeview concedes that Mr. Sanders filed his petition before the deed to the Property was delivered.

- 3 -

Trial Court Opinion (TCO), 7/20/2018, at 1-4 (most internal citations omitted).

The trial court did not order Mr. Sanders to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On July 20, 2018, the trial court issued its Rule 1925(a) opinion.

On appeal, Mr. Sanders raises the following issues for our review:

1. Did the [t]rial [c]ourt err by refusing to vacate or set aside the illegal default judgment especially where the [a]nswer of [Mr. Sanders] was plainly entered on time and even replied to by [Sun West]?

2. Is it a fundamental [e]rror of law that Pennsylvania [c]ourts do not issue a decree granting or denying the inherently discretionary relief in the "foreclosure of a mortgage" and "sale of the property by the [s]heriff" under Pa.R.C.P. 1037(d) and only [do so] after proper petition?

3. Was the trial [c]ourt required as a matter of law to vacate the underlying "mortgage judgment" obtained by summary judgment where the complaint itself failed to conform with a substantive rule of court at Pa.R.C.P. 1024(a) [and] (c) in the verification of the pleadings, and did this in effect allow a champertous suit to proceed in the name of an unverified [p]laintiff while actually underwritten by the nonparty debt collector?

4. Was the [s]heriff['s] [s]ale illegal or unlawful by "shorting" the [w]rit of [e]xecution and selling the [P]roperty for less than the total of "the judgment, interests and costs" as established in *Kaib v. Smith*, 684 A.2d 630, 632 (Pa. Super. 1996), and did this "short sale" therefore fail to divest the mortgagor of his title as an "incomplete payment[?"]

5. Does the failure of Pennsylvania law to require "adequate compensation" at "fair price" for the "public taking" by a "[p]ublic [o]fficer" in a "[s]heriff['s] [s]ale" make an unconstitutional breach of substantive property and due process rights?

6. Was [Lakeview's] [m]ortgage [j]udgment a clog on the [e]quity of [r]edemption for being twice the [s]ale [p]rice and the [c]ourt must therefore set aside the [s]heriff['s] [s]ale and that the failure to do so was a manifest abuse of discretion?

7. Does the failure of Pennsylvania law to guarantee sale price redemption make an unconstitutional breach of substantive property and due process rights, and that the [c]ourt must therefore [o]rder [s]ale [p]rice [r]edemption as a matter of law analog to the procedure for "[j]udicial [t]ax [s]ales" in this [s]tate?

8. Did the [c]ourt err as a matter of [l]aw in refusing to vacate the mortgage judgment where the underlying [c]omplaint failed to state any "grounds" for a mortgage foreclosure remedy as under Pa.R.C.P. 1146?

9. Was [Sun West's] failure to first present the mortgage note for exchange at the "place of payment" pursuant to the [Pennsylvania Uniform Commercial Code (PUCC)[2]] § 3-501 or to obtain a discharge as under **Gerber v. Piergrossi**[, 142 A.3d 854 (Pa. Super. 2016),] a *prima facie* fatal defect in the underlying complaint where negotiable instruments are personal claims barred in foreclosure cases under [R]ules 1141, 1146 [and] 1148?

10. "Mortgage foreclosure" being the wrong form of action for "negotiable instruments" ("*in rem* vs. *in personam*"), did the [c]ourt err as a matter of law by refusing to strike the "*in rem*" mortgage judgment that [was] obtained on a fictitious and illegal personal obligation instead of setting forth the "assignments of mortgage debt" as the "real interested party" as under Pa.R.C.P. 1147?

11. Is it an [e]rror of [l]aw where real estate is inherently excluded from negotiable collateral by definition and therefore impossible to state a claim for which relief could be granted, relating to both the "Uniform Commercial Code" in the same cause of action as for "*[i]n [r]em [m]ortgage [f]oreclosure [a]gainst [l]and [p]arcels*" especially where land is an immovable thing and negotiable instruments relate to tokens of exchange for things which are actually movable?

12. Is a Pennsylvania trial court bound by the Supremacy Clause of the United States Constitution to "make nothing but gold or silver tender for debt" as under Article I[,] Section 10 [of the] United States Constitution, and therefore all banking debts based on the expansion of credit-entries are fictitious claims that cannot be given the substance of law unless the [c]ourts will render

_____

[2] 13 Pa.C.S. §§ 1101-9809.

judgment in the value of lawful United States gold or silver money?

13. Was it therefore[,] in light of the total circumstance[s,] more efficient and reasonable to exercise the power of sound discretion and impose a "constructive trust" or to recognize that the modern banking relationship is a 'resulting trust' where the mortgagor is actually a securitization trustor with the right or equity to see a continuation of the underlying FDIC "fair value" guarantee, along with a substantial vicarious interest in the benefits of the FDIC "80% Loss Sharing" arrangement as pl[ed] within the underlying [m]otion?

14. Did [Sun West] even have standing to sue at the beginning of this case where at best [it] held an open endorsed circulating instrument with no relation or bearing on the right to enforce payments under the mortgage?

Mr. Sanders's Brief at 11-15 (unnecessary emphasis omitted).

At the outset, we agree with the trial court and Lakeview that Mr. Sanders's arguments are rambling and unclear. **_See_** TCO at 6 n.5 (noting that Mr. Sanders "raised several rambling and incoherent arguments challenging the judgment"); Lakeview's Brief at 7 (assessing that Mr. Sanders's arguments are "nonsensical and find no support in the law"). While we are "willing to liberally construe materials filed by a _pro se_ litigant, _pro se_ status confers no special benefit upon the appellant. To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." **_In re Ullman_**, 995 A.2d 1207, 1211-12 (Pa. Super. 2010) (citations omitted). Here, Mr. Sanders's arguments either contain no citation to relevant supporting authority or the record, **_see_** Mr. Sanders's Brief at 33, 50-56, 57-59, 82-83, propose new law and policy, **_see id._** at 38, 45-46, 48-

50, 83-89, 89-91, and/or consist of underdeveloped, unintelligible assertions, *see id.* at 46-47, 60-68, 68-76. Accordingly, we deem all of his arguments waived. *See Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) ("This Court will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.") (citations omitted).[3]

Furthermore, even if Mr. Sanders's arguments were properly developed, we observe that many of his issues appear not to pertain to the trial court's order denying his petition to set aside the sheriff's sale. Instead, most of Mr. Sanders's issues contest matters relating to the judgment in mortgage foreclosure, rather than the propriety of the sheriff's sale. With respect to

---

[3] We also note that Mr. Sanders's brief — which has a nearly 20-page summary of argument section, almost 60-page argument section, and roughly 10-page "Addendum" section advancing additional arguments —does not comply with our length requirements. *See* Pa.R.A.P. 2135(a) (stating that a principal brief shall not exceed 14,000 words). Although he includes a certificate of word count compliance in his brief, Mr. Sanders acknowledges his lack of compliance with Rule 2135(a), asking us to relieve him from having to abide by its requirements. Mr. Sanders's Brief at 102. Thus, he was aware of the rule, chose not to follow it, and failed to request prior approval from this Court to exceed our length limitations. We admonish him for doing so. *See* Pa.R.A.P. 2101 ("Briefs and reproduced records shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed, and, if the defects are in the brief or reproduced record of the appellant and are substantial, the appeal or other matter may be quashed or dismissed."); *Commonwealth v. Vurimindi*, -- A.3d --, 2018 WL 6581497, at *7 n.19 (Pa. Super. filed Dec. 14, 2018) (relying on Pa.R.A.P. 2101 and noting that this Court could dismiss the *pro se* appellant's appeal "for his lengthy brief alone").

such issues, the trial court discerned, "[n]one of these argument[s] was timely and none was preceded by a petition to strike or open as required by the Superior Court." TCO at 6 n.5 (citation omitted). **See also** Lakeview's Brief at 7 (arguing that "a final judgment in foreclosure may not be collaterally attacked by the foreclosure defendant in an appeal of a trial court order refusing to set aside a subsequent sheriff's sale"). We would agree. Specifically, we reiterate that the trial court entered default judgment in mortgage foreclosure in favor of Lakeview after Mr. Sanders failed to appear at trial. Although Mr. Sanders subsequently filed an appeal, this Court quashed it because an appeal taken from an order "entering a default judgment is interlocutory and unappealable." Order, 1/17/2017 (single page). Therein, we explained that "an appeal may be taken from an order denying a petition to strike a judgment." **Id.** (citations omitted). Nevertheless, after this Court quashed his appeal, Mr. Sanders took no further action against the foreclosure judgment. It is not appropriate for him to challenge it now, and he cites no pertinent authority to convince us otherwise.

As for the issues numbered 4, 5, and 7, *supra*, which pertain to the sheriff's sale, we would consider them waived because of Mr. Sanders's failure to clearly raise them in his August 10, 2017 petition to set aside the sheriff's sale. **See also** TCO at 5-6 (construing Mr. Sanders's petition as "attacking the adequacy of the sale price"); Lakeview's Brief at 11-12, 14-16 (discerning that Mr. Sanders did not raise the same arguments below and insisting that Mr. Sanders's "arguments, though sharing certain common words or phrases

with [his] arguments below, are substantially different and raised for the first time on appeal"). It is well-established that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).

With respect to the issue numbered 6 above, Mr. Sanders appears to argue that Lakeview's mortgage was a clog on the equity of redemption, and if his property sold for $79,100, he "was entitled to pay the mortgage claim at that number as well." Mr. Sanders's Brief at 51. Even if this argument had not been waived, we would reject it. As Lakeview points out, "there is no logic in the argument that a sale that leaves the judgment creditor only partially satisfied should somehow inure to the debtor's benefit or otherwise reduce the amount he must pay his creditor in his obligation." Lakeview's Brief at 16 (footnote omitted). It persuasively discerns that "such a rule would give rise to an obvious moral hazard inviting borrowers to default on their secured loans whenever the value of the security collateral falls below the payoff, thus permitting a crafty borrower to foist a short payoff on his lender." *Id.* at 17. Further, Lakeview argues that "in Pennsylvania, a mortgagor's equity of redemption is effectively cut off an hour before the sheriff's sale, so tying the redemption amount to a subsequent sale bid is a temporal impossibility even if it did have some logical appeal." *Id.* at 16 (citing *Peoples Bank v. Dorsey*, 683 A.2d 291, 296 (Pa. Super. 1996), and 41 P.S. § 404(a)).

Finally, it is unclear to us whether Mr. Sanders continues to contest the adequacy of the sale price on appeal. *See also* Lakeview's Brief at 13

(observing that Mr. Sanders does not advance an argument relating to the gross inadequacy of the sale price on appeal). Thus, on this basis, we would deem this argument waived. *See Hardy*, *supra*. Even if not waived, however, the trial court aptly explained:

> Whether to set aside a sheriff's sale is within the sound discretion of the trial [c]ourt. *Nat'l Penn Bank v. Shaffer*, 672 A.2d 326, 328 (Pa. Super. 1996). The Superior Court will not reverse a trial court's decision to grant or deny a petition to set aside unless the lower court clearly abused its discretion. *Id.* An abuse of discretion is not just an error in judgment. *Id.* The trial court abuses its discretion when it overrides or misapplies the law or when the decision in question is manifestly unreasonable or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record. *Id.* Equitable principles govern whether to set aside a sheriff's sale. *Id.* at 329. The party seeking [to] set aside bears that burden to prove circumstances warranting exercise of a trial court's equitable powers. *Id.* Consequently, the trial court may deny a petition to set aside a sheriff's sale [where] the petitioner fails to raise sufficient evidence to support his or her material allegations, which must be established by clear and convincing evidence. *Id.*
>
> The [c]ourt did not err by determining that the final bidding price was adequate and not a sufficient basis for setting aside the sheriff's sale. A trial court, upon proper cause, may set aside a sheriff's sale "[u]pon petition of any party in interest before delivery of the personal or of the sheriff's deed…." Pa.R.C.P. 3132…. Courts have entertained such petitions and granted relief in instances where the validity of the sale proceedings was challenged, a deficiency pertaining to the notice of sale existed or misconduct occurred in the bidding process. *Blue Ball Nat'l Bank v. Balmer*, 810 A.2d 164, 166 (Pa. Super. 2002) (citing *Nat'l Penn Bank*…, 672 A.2d at 329-31).
>
> There is proper cause to set aside a sheriff's sale where the final sale price is a "gross inadequacy." *Blue Ball Nat'l Bank*, 810 A.2d at 167. The price received at a duly advertised public sale is presumed to be the highest and best price obtainable. *First Federal Sav. & Loan Assoc. v. Swift*, 321 A.2d 895, 897 n.4 (Pa. 1974). The Superior Court has evaluated the adequacy of

- 10 -

the final selling price by comparing it to the Property's market value. ***Compare Blue Ball Nat'l Bank***, 810 A.2d at 168 (affirming that a purchase price that was 72 to 75 percent of the Property's appraisal was not grossly inadequate) ***with Bank of America, N.A. v. Estate of Hood***, 47 A.3d 1208, 1212 (Pa. Super. 2012) (reversing a trial court's decision that a sale for 44 percent of what another purchaser would have paid was grossly inadequate).

In this case, according to Mr. Sanders, the fair-market value of the Property at the time of the sheriff's sale was $106,400. At the sheriff's sale, the Property sold for $79,100. This purchase price amounts to 74 percent of the Property's market value. This is within the range of prices the Superior Court accepted in ***Blue Ball*** and ***Hood***. *See **Blue Ball Nat'l Bank***, 810 A.2d at 168; ***Estate of Hood***, 47 A.3d at 1212. Mr. Sanders therefore failed to meet his burden of proving proper cause to set aside the sheriff's sale because the final sale price was not grossly inadequate.

TCO at 4-6 (headings, citations to the record, and footnote omitted; some brackets added). We see no abuse of discretion by the trial court in its analysis. Accordingly, no relief would be due on this basis.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/28/19

- 11 -