In re: Upset Sale, Tax Claim Bureau :
of Tioga County, Control No. 012488 :
(Martin J. Ostapowicz) :
            : No. 1285 C.D. 2022
Appeal of: Martin J. Ostapowicz : Submitted: September 11, 2023


BEFORE: HONORABLE CHRISTINE FIZZANO CANNON, Judge
     HONORABLE STACY WALLACE, Judge
     HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION
BY JUDGE FIZZANO CANNON      FILED: November 6, 2023


    Martin J. Ostapowicz (Appellant) appeals the October 12, 2022 order (Trial Court Order) of the Court of Common Pleas of Tioga County (Trial Court) overruling Appellant's Objections/Exceptions to Tax Sale. Upon review, we affirm.

## I. Background and Procedural Posture

    Appellant was the record owner of a 52.77-acre parcel of real property in Morris Township, Tioga County (Property), upon which his home was situated. *See* Findings of Fact and Opinion dated October 12, 2022 (Trial Court Opinion) at 1 (pagination supplied), Findings of Fact (FF) No. 1; Reproduced Record (RR) at 305a. Appellant repeatedly failed to pay the Property's real estate taxes. *See* Trial Court Opinion at 1, FF No. 2; RR at 305a. As a result of continued real estate tax delinquencies, the Tioga County Tax Claim Bureau (Bureau) sold the Property at an upset tax sale on September 24, 2021 (Upset Sale). *See* Trial Court Opinion at 1, FF Nos. 3-4; RR at 305a. Thereafter, Appellant filed objections to the Upset Sale

(Objections),[1] which the Bureau answered.[2]  *See* RR at 5a-49a.  The Trial Court conducted a hearing on the Objections on April 28, 2022, and rendered its decision overruling the Objections on October 12, 2022.  *See* Notes of Testimony, April 28, 2022 (NT 4/28/2022); *see also* Trial Court Opinion.  This appeal followed.

## II.  Issues

Appellant raises multiple claims on appeal.[3]  First, Appellant claims that the Trial Court erred by overruling the Objections because he did not receive statutorily required notice of the Upset Sale.  *See* Appellant's Br. at 4, 16-21.  Next, Appellant claims that the Trial Court erred by overruling the Objections because the Bureau did not properly personally serve him with notice of the Upset Sale.  *See* Appellant's Br. at 4, 21-23.  Finally, Appellant claims that the Trial Court erred by overruling the Objections because the Upset Sale amount was grossly inadequate. *See* Appellant's Br. at 4, 14-16.

---

[1] Appellant originally filed the "Objections/Exceptions to Tax Sale Held September 24, 2021" (First Objections) on October 6, 2021.  *See* RR at 6a-12a.  The Bureau filed its answer on October 18, 2021.  *See* RR at 13a-36a.  Appellant then filed the "First Amended Objections/Exceptions to Tax Sale Held on September 24, 2021" (Amended Objections) on November 5, 2021.  *See* RR at 37a-40a.  The Trial Court entered the Decree Nisi in this matter on November 17, 2021, prompting Appellant to file the "Objections/Exceptions to Tax Sale" (Operative Objections) that incorporated the First Objections and the Amended Objections on December 9, 2021.  *See* RR at 43a-44a.  The Bureau then filed an answer to the Operative Objections.  *See* RR at 45a-49a.  For clarity, we refer to the Operative Objections herein as simply the Objections.

[2] Timothy J. Smith (Intervenor), the successful Upset Sale bidder, filed a petition to intervene on March 18, 2022, which the Trial Court granted by order dated March 21, 2022.  *See* RR at 50a, 59a.  Intervenor was represented by counsel during the proceedings before the Trial Court and in the instant appeal before this Court.

[3] "Our review is limited to determining whether the trial court abused its discretion, clearly erred as a matter of law, or rendered a decision unsupported by the evidence."  *In re 1999 Upset Sale of Real Est.*, 811 A.2d 85, 87 n.1 (Pa. Cmwlth. 2002).

## III. Discussion

### A. *Notice and Personal Service Requirements*

Initially, we note that "[t]he purpose of tax sales is not to strip the taxpayer of his property but to insure the collection of taxes." *Husak v. Fayette Cnty. Tax Claim Bureau*, 61 A.3d 302, 312 (Pa. Cmwlth. 2013). The property owner notice provisions of Sections 601(a)(3) and 602 of the Real Estate Tax Sale Law (RETSL),[4] 72 P.S. §§ 5860.601(a)(3), 602, are at issue in the instant matter. Regarding Section 602 of the RETSL, this Court has explained:

> In all tax sale cases, the tax claim bureau has the burden of proving compliance with the statutory notice provisions. Section 602 [of the RETSL] requires three different forms of notice to property owners prior to an upset tax sale: publication, posting, and mail. If any of the three types of notice is defective, the tax sale is void. Notwithstanding our mandate to strictly construe the notice provisions of the law, the notice requirements of Section 602 of the [RETSL] are not an end in themselves, but are rather intended to ensure a property owner receives actual notice that his or her property is about to be sold due to a tax delinquency. However, strict compliance with the notice requirements of Section 602 is not required when the [b]ureau proves that a property owner received actual notice of a pending tax sale.

*In re Consol. Reps. & Return by Tax Claims Bureau of Northumberland Cnty. of Props. (Appeal of Neff)*, 132 A.3d 637, 644-45 (Pa. Cmwlth. 2016) (internal citations, footnote, and quotation mark omitted); *see also* 72 P.S. § 5860.602.

Further, "[i]n addition to the notice requirements of Section 602 of the [RETSL], if the property is[] occupied by the owner, Section 601(a)(3) of the

---

[4] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101-5860.803.

[RETSL] requires that each owner-occupant receive additional notice of a tax sale by personal service." *Appeal of Neff*, 132 A.3d at 645. Specifically, Section 601(a)(3) provides:

> No owner-occupied property may be sold unless the bureau has given the owner[-]occupant written notice of such sale at least ten (10) days prior to the date of actual sale by personal service by the sheriff or his deputy or person deputized by the sheriff for this purpose unless the county commissioners, by resolution, appoint a person or persons to make all personal services required by this clause. The sheriff or his deputy shall make a return of service to the bureau, or the persons appointed by the county commissioners in lieu of the sheriff or his deputy shall file with the bureau written proof of service, setting forth the name of the person served, the date and time and place of service, and attach a copy of the notice which was served. If such personal notice cannot be served within twenty-five (25) days of the request by the bureau to make such personal service, the bureau may petition the court of common pleas to waive the requirement of personal notice for good cause shown. Personal service of notice on one of the owners shall be deemed personal service on all owners.

72 P.S. § 5860.601(a)(3). "The requirements of Section 601(a)(3) are cumulative and apply in addition to [] tax claim bureaus' obligations to provide notice through publications, posting, and mail." *Appeal of Neff*, 132 A.3d at 645. Therefore, actual receipt of another form of notice is not a defense to a lack of personal service under Section 601(a)(3) and does not cure a defect in the personal service requirement. *See McKelvey v. Westmoreland Cnty. Tax Claim Bureau,* 983 A.2d 1271, 1274 (Pa. Cmwlth. 2009).

4

Thus, this Court has summarized the tax sale notice requirements as follows:

> In sum, in the absence of actual notice, the [b]ureau must prove strict compliance with the notice requirements of Section 602 of the [RETSL]. Further, and notwithstanding whether a taxpayer received actual notice, the [b]ureau must demonstrate that it personally served notice on any owner-occupant of the [p]roperty subject to the upset tax sale or obtained a waiver of personal service from the trial court.

*Appeal of Neff*, 132 A.3d at 646.

In the instant matter, at the hearing before the Trial Court, the Bureau presented the testimony of Joshua Zeyn, the Director of the Bureau's Tax Claim Office and Chief Assessor for Tioga County. *See* NT 4/28/2022 at 5-24. Mr. Zeyn explained that Appellant has a long history of failing to timely pay the property taxes on the Property. *See* NT 4/28/2022 at 18; RR at 243a; *see also* Tax History Report, NT 4/28/2022 Ex. 15; RR at 107a. The Bureau's tax history report reveals delinquent tax returns for the Property for every year going back to 2004, meaning that the Property's taxes went to collections every year. *See id.* Mr. Zeyn testified that Appellant did not pay the property taxes for the Property for 2018, but instead entered into an Agreement to Stay Sale with the Bureau in 2020 for the payment of those taxes. *See* NT 4/28/2022 at 8-9; RR at 233a-34a; *see also* Agreement to Stay Sale, NT 4/28/2022 Ex. 5; RR at 67a-68a. Appellant made one payment on this Agreement to Stay Sale and then defaulted in October of 2020, and the balance of the Property's 2018 property taxes remains outstanding. *See* NT 4/28/2022 at 9-14; RR at 234a-39a.

Mr. Zeyn also testified that, on February 4, 2020, the Bureau sent Appellant a notice that is not required by the RETSL informing Appellant that the Property's 2019 property taxes were outstanding and delinquent (February 2020 Notice). *See* NT 4/28/2022 at 5-6; RR at 230a-31a; *see also* NT 4/28/2022 Ex. 1; RR at 60a. The February 2020 Notice was returned to the Bureau as undeliverable. *See* NT 4/28/2022 at 5-6; RR at 230a-31a.

Mr. Zeyn further explained that, on March 3, 2020, the Bureau mailed Appellant, by restricted mail, a Notice of Return and Claim (March 2020 Notice of Return and Claim) pursuant to Section 602 of the RETSL, 72 P.S. § 5860.602. *See* NT 4/28/2022 at 6; RR at 231a; *see also* NT 4/28/2022 Ex. 2; RR at 61a. The March 2020 Notice of Return and Claim provided Appellant with information regarding the Property's taxes and interest due through March 31, 2020, and provided further warnings regarding non-payment and the possibility of a tax sale as a consequence of non-payment. *See id.* This notice was also returned to the Bureau as undeliverable. *See* NT 4/28/2022 at 6; RR at 231a.

Mr. Zeyn further testified that, on November 5, 2020, the Bureau mailed Appellant an Open Billing Letter,[5] which outlined the Property's outstanding 2019 real estate tax obligation and balance, outlined payment options, and provided information regarding seeking an agreement to stay sale.[6] *See* NT 4/28/2022 at 8; RR at 233a; *see also* NT 4/28/2022 Ex. 4; RR at 66a.

---

[5] Like the previously sent February 2020 Notice, the Open Billing Letter is not required by the RETSL. *See* NT 4/28/2022 at 7-8; RR at 232a-33a.

[6] Despite the standard information regarding agreements to stay sale contained in the Open Billing Letter, Appellant was not actually eligible to enter into an agreement to stay sale regarding the Property's delinquent 2019 taxes by virtue of having defaulted on the agreement to stay sale regarding the Property's 2018 taxes. *See* NT 4/28/2022 at 8-9; RR at 233a-34a; *see also* NT 4/28/2022 Ex. 5; RR at 66a.

Mr. Zeyn explained that, on April 1, 2021, the Bureau sent Appellant another unrequired notice (April 2021 Notice) providing the outstanding balance of the Property's tax obligations and outlining payment options and important dates regarding payment of the outstanding taxes and consequences for failure to make such payments. *See* NT 4/28/2022 at 9-10; RR at 234a-35a; *see also* NT 4/28/2022 Ex. 6; RR at 71a. The April 2021 Notice gave 3:30 p.m. on September 23, 2021, as the deadline for the payment of the Property's outstanding taxes. *See* NT 4/28/2022 at 10; RR at 235a. The April 2021 Notice was not returned to the Bureau as undeliverable and Appellant did not respond. *See id.*

On July 14, 2021, Mr. Zeyn explained, the Bureau sent Appellant, again by restricted mail, a Notice of Public Tax Sale (July 2021 Notice) pursuant to Section 602 of the RETSL, 72 P.S. § 5860.602, that scheduled the Upset Sale for September 24, 2021. *See* NT 4/28/2022 at 11; RR at 236a; *see also* NT 4/28/2022 Ex. 8; RR at 82a. The July 2021 Notice allowed Appellant until July 30, 2021, to pay or set up an agreement to pay to avoid advertisement of the Upset Sale. *See* NT 4/28/2022 at 11; RR at 236a. The July 2021 Notice expressly warned Appellant: "Your property is about to be sold without your consent. Property may be sold for a small fraction of its fair market value." *See* NT 4/28/2022 at 11; RR at 236a; *see also* NT 4/28/2022 Ex. 8; RR at 82a. The July 2021 Notice was returned unclaimed to the Bureau. *See* NT 4/28/2022 at 11; RR at 236a. As a result, the Bureau completed a proof of mailing on September 10, 2021, documenting that it had mailed the July 2021 Notice to Appellant. *See* NT 4/28/2022 at 12; RR at 237a; *see also* NT 4/28/2022 Ex. 9; RR at 85a.

Mr. Zeyn testified that the Notice of Return and Claim detailing the scheduled Upset Sale was also physically posted by a processing agent on the

7

Property on June 14, 2021. *See* NT 4/28/2022 at 12-13; RR at 237a-38a; *see also* Field Posting Report, NT 4/28/2022 Ex. 10; RR at 86a-87a. Additionally, the processing agent unsuccessfully attempted to personally serve Appellant on June 14, 2021, followed by a second unsuccessful attempt at personal service on June 17, 2021. *See* NT 4/28/2022 at 12-13; RR at 237a-38a. However, the processing agent ultimately successfully served Appellant with the Notice of Return and Claim on the third attempt on June 18, 2021. *See* NT 4/28/2022 at 13; RR at 238a.

Mr. Zeyn also testified that, on September 8, 2021, the Bureau mailed Appellant a final notice regarding the scheduled Upset Sale (Final Notice).[7] *See* NT 4/28/2022 at 13; RR at 238a; *see also* NT 4/28/2022 Ex. 11; RR at 88a. The Final Notice again informed Appellant of the Property's outstanding tax balance and the scheduled Upset Sale date and time, and further informed Appellant that he had until September 23, 2021, to pay the Property's outstanding 2019 property taxes to avoid the Upset Sale. *See* NT 4/28/2022 at 13; RR at 238a. The Final Notice was not returned as undeliverable. *See* NT 4/28/2022 at 13; RR at 238a.

Mr. Zeyn explained that, in addition to the various statutorily required and additional unrequired notices sent to Appellant at the Property, the physical posting of the Property, and the personal service of notice of the Upset Sale on Appellant, Appellant also spoke directly with the Bureau prior to the Upset Sale. *See* NT 4/28/2022 at 14; RR at 239a. The Bureau's Caller Comments log notes that Appellant telephoned the Bureau on September 1, 2021, to request the amount required to avoid the Upset Sale. *See* NT 4/28/2022 at 15; RR at 240a; *see also* Caller Comments, NT 4/28/2022 Ex. 12; RR at 89a-90a. During the telephone call,

---

[7] As with the February 2021 Notice and the Open Billing Letter discussed *supra*, the Bureau was not required by the RETSL to send Appellant this Final Notice.

the Bureau advised Appellant that he needed to pay $2,595.50 in certified funds prior to 3:30 p.m. on September 23, 2021, to prevent the Upset Sale. *See* NT 4/28/2022 at 15; RR at 240a. Appellant did not make payment of the required funds, and the Property was sold at the Upset Sale as scheduled. *See* NT 4/28/2022 at 15-16; RR at 240a-41a.

The Trial Court also accepted into evidence the deposition testimony of Evelyn Laughlin, the processing agent who posted the Property on June 14, 2021, and personally served Appellant with Notice of the Upset Sale on June 18, 2021. *See* Notes of Testimony, April 19, 2022 (NT 4/19/2022) at 24-52; RR at 131a-62a.[8] Ms. Laughlin testified that on June 14, 2021, she posted the Property by placing the Notice of Return and Claim on a wire stake with two holders at the end of the Property's driveway, as the house was not visible from the road. *See* NT 4/19/2022 at 42-44; RR at 151a-53a. Ms. Laughlin explained that, when placed, the posted notice was not obscured by bushes or trees and was conspicuous to both people passing on the road and visible to persons entering the Property. *See* NT 4/19/2022 at 44; RR at 153a. Ms. Laughlin took a picture of the notice as posted, which photograph became part of the Field Report. *See* NT 4/19/2022 at 43; RR at 152a. Additionally, Ms. Laughlin explained that she attempted personal service of the notice on Appellant at the Property on three separate occasions: the first attempt on June 14, 2021, when she posted the Property; the second attempt on June 17, 2021; and the third attempt on June 18, 2021, on which attempt she succeeded in personally

---

[8] The transcript of Ms. Laughlin's deposition also includes the testimony of Eugene Johnson, the Chief Information Officer of Palmetto Posting, Inc., the company engaged to post the Property. *See* NT 4/19/2022 at 8-23; RR at 113a-28a. Mr. Johnson described Palmetto Posting's property posting process and corroborated Ms. Laughlin's testimony through a discussion of Palmetto Posting's Field Report on the Property. *See* NT 4/19/2022 at 8-23; RR at 113a-28a.

serving Appellant by hand with a copy of the Notice of Return and Claim. *See* NT 4/19/2022 at 46-47; RR at 156a-57a.

Appellant testified on his own behalf at the hearing and claimed that he never saw the posting at the Property, did not recall receiving any notices about the Upset Sale, did not see the advertisement of the Upset Sale in any publication, and was never told about the posting or the Upset Sale by anyone else who used the Property's driveway. *See* NT 4/28/2022 at 28, 30, 46-48; RR at 253a, 255a, 271a-73a. He also claimed not to recall a person serving him with notice on June 18, 2021. *See* NT 4/28/2022 at 26; RR at 251a. He asserted that he learned of the Upset Sale from his real estate agent on the day of the sale, at which time he went directly to the Bureau with the money to pay the delinquent taxes, but was informed that he was too late and that the Property had been sold. *See* NT 4/28/2022 at 30-31, 47; RR at 255a-56a, 272a. Likewise, Appellant's son and daughter, who use the Property's driveway multiple times a week, and Appellant's employee, who lives on the Property and uses the driveway multiple times a day, all testified that they did not see the posting at the end of the Property's driveway. *See* NT 4/28/2022 at 55-56, 58, 60-61, 67-68; RR at 280a-81a, 283a, 285a-86a, 292a-93a.

In denying the Objections, the Trial Court stated as follows:

> Having considered the evidence presented, and the substantial conflicts between the testimony of [Appellant] and that of the Bureau and its witnesses, the [Trial] Court specifically determines that the testimony of Mr. Zeyn and Ms. Laughlin is credible on the central issues, specifically as to the mailing of the initial Notice, the mailing of the September follow-up Notice, and the Bureau's documentation of the phone call received from [Appellant] on September 1[], 2021[.] Further, as to the actual posting of the [P]roperty and the personal service of [Appellant], the [Trial] Court notes that [Appellant] denies each of

10

these, specifically alleging that he never observed the posting, that he was in fact never personally served, and that he never called the [] Bureau as documented in [its] records. In light of the entirety of the record before the [Trial] Court, the [Trial] Court specifically finds [Appellant's] testimony is not credible.

The [Trial] Court finds that the [] Bureau has demonstrated that the challenged sale was properly notice[d] to [Appellant], the [P]roperty was properly posted, and that [Appellant] received personal service of the Notice.

Trial Court Opinion at 3-4.

We find no error in the Trial Court's determination. The testimony and documentary exhibits entered in evidence at the April 28, 2022 hearing, discussed *supra*, illustrate the Bureau's compliance with the RETSL's notice requirements.[9] Mr. Zeyn testified at length about the multiple notices mailed to Appellant at the Property. These notices included the statutorily required July 14, 2021 Notice of Public Tax Sale, as well as additional unrequired notices mailed by the Bureau on February 4, 2020, April 1, 2021, and September 8, 2021. Further, despite Appellant's testimony to the contrary, which the Trial Court discredited,[10] Mr. Zeyn

---

[9] Appellant stipulated to the Bureau's satisfaction of the publication requirement by placing advertisements of the Upset Sale in two local newspapers. *See* N.T. 4/28/2022 at 10-11; RR at 235a-36a; *see also* Trial Court Opinion at 2.

[10] We reiterate that the Trial Court expressly credited the testimony of Mr. Zeyn and Ms. Laughlin and discredited the testimony of Appellant. *See* Trial Court Opinion at 3-4. We may not disregard these credibility determinations and reweigh the evidence presented to the Trial Court. *See Laurel Rd. Homeowners Ass'n, Inc. v. Freas*, 191 A.3d 938, 952 (Pa. Cmwlth. 2018) ("It is beyond peradventure that the trial court, sitting as the fact-finder, is free to believe all, part or none of the evidence, to make all credibility determinations, and to resolve all conflicts in the evidence. This Court, accordingly, cannot upset the trial court's credibility determinations or reweigh the evidence to reach a finding contrary to the trial court." (internal citations and quotation marks omitted)).

11

and Ms. Laughlin both credibly testified regarding the physical posting of the Property on June 14, 2021, and the successful personal service of notice on Appellant on June 18, 2021. This evidence supports the Trial Court's determinations that the Bureau properly noticed Appellant of the Upset Sale by mailing, posting of the property, and in-hand personal service.[11]

**B.** *Adequacy of Sale Price*

To the extent Appellant argues that he is entitled to equitable relief based on the alleged gross inadequacy of the Property's purchase price at the Upset Sale, we do not agree.

Initially, "[g]enerally speaking, when a property owner is delinquent in paying taxes, an upset tax sale is conducted to recover the 'upset price,' which is the total sum of the taxes owed plus any tax liens and municipal claims[.]" *In re Adams Cnty. Tax Claim Bureau*, 200 A.3d 622, 623 n.1 (Pa. Cmwlth. 2018); *see also* Section 605 of the RETSL, 72 P.S. § 5860.605.[12] Properties may be sold at an upset

---

[11] We acknowledge that Appellant's brief before this Court contains an argument that Palmetto Posting was not properly authorized to post the Property affecting the adequacy of posting. *See* Appellant's Br. at 3 & 23. We observe, however, Appellant waived this issue as it was not raised before the trial court, but rather was raised for the first time on appeal to this Court. *See* Pa.R.A.P. 302.

[12] Section 605 of the RETSL provides, in relevant part:

> The bureau shall fix as the upset price to be realized at the sale of any property upon a claim absolute, the sum of (a) the tax liens of the Commonwealth, (b) the amount of the claim absolute and interest thereon on which the sale is being held, (c) the amount of any other tax claim or tax judgment due on such property and interest on the judgment to the date of sale, (d) the amount of all accrued taxes including taxes levied for the current year, whether or not returned, a record of which shall be furnished to the bureau by tax collectors, receivers of taxes and taxing districts, (e) the amount of the municipal claims against the property, and (f) the record costs

12

sale on bids equal to or greater than the upset price. *See* 72 P.S. § 5860.605 ("No sale of property shall be made by the bureau unless a bid equal to the upset price is made.").

Additionally, even were we to assume that simply reaching a property's approximate upset price does not necessarily prove the sufficiency of the price achieved in an upset sale, Pennsylvania courts have held that, in cases challenging tax sales on the basis of the adequacy of the sale price, the mere alleged inadequacy of the sale price, standing alone, is not a sufficient basis upon which to set aside the sale. *See Mathias v. York Cnty Tax Claim Bureau* (Pa. Cmwlth., No. 714 C.D. 2021, filed July 8, 2022),[13] slip op. at 5 (citing first *Allegheny Cnty. v. Golf Resort, Inc.*, 974 A.2d 1242, 1247 (Pa. Cmwlth. 2009), then *Provident Nat'l Bank, N.A. v. Song*, 832 A.2d 1077, 1081 (Pa. Super. 2006)[14]). While cases involving grossly inadequate sales prices typically involve sheriffs' sales in mortgage foreclosure actions, the grossly inadequate price may also be examined as a basis to set aside tax sales where irregularities in the sale contribute to the grossly inadequate price. *See Hart v. Bulldawg, LLC and City of Phila., Dep't of Revenue* (Pa. Cmwlth., No. 107 C.D. 2016, filed Feb. 14, 2017), slip op. at 7 n.5 (citing *Allegheny Cnty.*, 974 A.2d at 1247-48). In the sheriffs' sale context, this Court has observed:

> and costs of sale, including pro rata costs of the publication of notice
> and costs of mail and posted notices in connection with the return of
> the claim and mail and posted notices of sale.

72 P.S. § 5860.605.

[13] Pursuant to Commonwealth Court Internal Operating Procedure Section 414(a), 210 Pa. Code § 69.414(a), unreported panel decisions of this Court issued after January 15, 2008, may be cited for their persuasive value.

[14] Although not binding, Superior Court decisions are persuasive authority in this Court. *See Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

Where a tax sale is challenged based upon the adequacy of the price, our courts have frequently held that mere inadequacy of price, standing alone, is not a sufficient basis for setting aside a sheriff's sale. *Allegheny C[n]ty.* [], 974 A.2d [at] 1247 [] (quoting *Provident Nat'l Bank* [], 832 A.2d [at] 1081[]). Where a gross inadequacy exists, however, courts have found proper grounds to set aside a sheriff's sale, and each case is determined on its own facts. *Id.* "It is for this reason that the term 'grossly inadequate price' has never been fixed by any court at any given amount or any percentage amount of the sale." *Scott v. Adal Corp.*, [] 509 A.2d 1279, 1283 ([Pa. Super.] 1986)[]. In addition, a presumption exists that the price received at a public sale is the highest and best available. *Blue Ball Nat'l Bank v. Balmer*, 810 A.2d 164, 167 (Pa. Super. 2002), *appeal denied*, [] 820 A.2d 702 (Pa. 2003).

*City of Phila. v. Hart*, 224 A.3d 815, 822 (Pa. Cmwlth. 2020); *see also Mathias*, slip op. at 5-6. "Pennsylvania courts have concluded that a sheriff's sale price is grossly inadequate where [the] sale price was a small percentage – roughly ten percent or less – of the established market value." *Bank of Am., N.A. v. Est. of Hood*, 47 A.3d 1208, 1212 (Pa. Super. 2012) (collecting cases).

In the instant matter, the Property's approximate upset sale price was $7,465.64 and the final sale price realized at the Upset Sale was $83,000. *See* RR at 87a, 252a; *see also* NT 4/28/2022 at 27. This realized sale price, therefore, represents more than 11 times the approximate upset sale price necessary to allow the Upset Sale to proceed to completion. *See* 72 P.S. § 5860.605. Additionally, the Property was assessed at $465,000. *See* RR at 181a. While there is no fixed percentage of amount of appraised value versus sale price that automatically constitutes a "grossly inadequate price," the $83,000 sale price represents approximately 18% of the appraised value of the Property, or nearly twice the

14

percentage of appraised value versus sale price that Pennsylvania courts have found to represent a "grossly inadequate price" in sheriffs' sales. *See Est. of Hood*, 47 A.3d at 1212. Additionally, Appellant can hardly feign surprise that the Property's final sale price represented only approximately one fifth the assessed value, where the Bureau expressly warned Appellant in the July 2021 Notice that the Property may be sold at the Upset Sale for a fraction of its fair market value. *See* NT 4/28/2022 Ex. 8; RR at 82a. Based on this information, the Trial Court found no legal basis for awarding equitable relief based on the sale price. *See* Trial Court Opinion at 4. We find no error in the Trial Court's determination. *Hart*, *Mathias*, *Est. of Hood*.

## IV. Conclusion

For the above reasons, we affirm the Trial Court Order.


_____
CHRISTINE FIZZANO CANNON, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Upset Sale, Tax Claim Bureau   :
of Tioga County, Control No. 012488   :
(Martin J. Ostapowicz)   :
                                   :   No. 1285 C.D. 2022
Appeal of: Martin J. Ostapowicz   :

## O R D E R

AND NOW, this 6th day of November, 2023, the October 12, 2022 order of the Court of Common Pleas of Tioga County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge